# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS
### EAST ST. LOUIS

| | | |
|---|---|---|
| TAYLOR BYRON and TAYLOR BERRY, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **Case Number: 3:24-cv-1082** |
| STIIIZY, INC., | ) ) | |
| Defendant. | ) ) | |

## CLASS ACTION COMPLAINT

## INTRODUCTION

1.     Plaintiffs Taylor Byron ("Plaintiff Byron") and Taylor Berry ("Plaintiff Berry"), individually and on behalf of all others similarly situated (collectively "Plaintiffs"), bring this class action to recover damages for the purchase of products manufactured, labeled, packaged, distributed, promoted, advertised, and/or sold by Defendant Stiiizy, Inc. ("Stiiizy") which were not legal Delta 8 hemp products as claimed, but were instead cannabis products containing more—in some instances nearly 200% more—of the active ingredient THC.[1]

## FACTUAL ALLEGATIONS

### I.     THE 2018 FARM BILL LEGALIZED INDUSTRIALIZED HEMP PRODUCTS.

2.     In 2018, the United States Congress passed the Agriculture Improvement Act, P.L. 115-334, commonly known as the 2018 Farm Bill ("2018 Farm Bill").

3.     Before the 2018 Farm Bill was enacted, *Cannabis sativa* L. with delta-9 tetrahydrocannabinol ("THC") levels greater than 0.3% was considered marijuana, a Schedule I

---

[1] Throughout this Complaint, the terms "cannabis" and "marijuana" will be used interchangeably. Both terms will refer to *Cannabis sativa* L. with delta-9 THC levels greater than 0.3%.

controlled substance under the Controlled Substances Act ("CSA"), 21 U.S.C. 801 *et seq.* The practical result of this classification was that domestic production of hemp was largely limited to persons registered under the CSA to grow marijuana.[2]

4.      The 2018 Farm Bill, however, authorized the production of hemp and removed hemp and hemp seeds from the Drug Enforcement Administration's ("DEA") schedule of controlled substances.[3]

5.      Under the 2018 Farm Bill, the term "hemp" means the plant species *Cannabis sativa* L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 THC concentration of not more than 0.3 percent on a dry weight basis.[4] This type of hemp and its derivatives is commonly known as "Delta 8 THC."

6.      Cannabis with a THC level exceeding 0.3 percent is still considered marijuana, which remains a Schedule I controlled substance under the CSA.

7.      As a result of hemp's removal as a Schedule I controlled substance, sales of hemp-based products were expected to—and did—steadily increase. The United States industrial hemp market is estimated at a minimum of just under $1 billion and sometimes up to $2.21 billion, depending upon the source, with revenues expected to rise.

8.      Moreover, after passage of the 2018 Farm Bill, public interest in Delta 8 THC increased rapidly in the U.S.[5] Researchers studying the spike in interest determined the global rate

---

[2] https://www.federalregister.gov/documents/2019/10/31/2019-23749/establishment-of-a-domestic-hemp-production-program#citation-2-p58523
[3] https://www.usda.gov/topics/hemp
[4] https://www.federalregister.gov/documents/2019/10/31/2019-23749/establishment-of-a-domestic-hemp-production-program#citation-2-p58523.
[5] https://www.sciencedirect.com/science/article/abs/pii/S0955395921004758

of internet searches for Delta 8 THC was stable between 2011 and 2019, then rose by 257% from 2019 to 2020 and by another 705% from 2020 to 2021.[6]

9.      Wary of this drastic rise in popularity, the Food and Drug Administration ("FDA") has cautioned consumers against Delta 8 THC products, noting they "have not been evaluated or approved by the FDA for safe use in any context," and "[t]hey may be marketed in ways that put the public health at risk and should especially be kept out of reach of children and pets."[7]

## II.    STATE AND FEDERAL REGULATION OF INDUSTRIAL HEMP PRODUCTS.

10.     Under the 2018 Farm Bill and its implementing regulations, a State or Indian Tribe may opt to submit a plan concerning the monitoring and regulation of hemp production ("State Hemp Production Plan"). Such plans are required to be submitted to and approved by the Secretary of the United States Department of Agriculture ("USDA").[8]

11.     State Hemp Production Plans are required, among other obligations, to contain procedures for sampling and testing hemp to ensure the cannabis grown and harvested does not exceed the acceptable hemp THC level.[9]

12.     State Hemp Production Plans are also required to include procedures to identify and attempt to correct certain negligent acts (for example, producing plants exceeding the acceptable hemp THC level), as well as provisions regulating producer violations made with a culpable mental state greater than negligence, i.e., acts that are intentional, knowing, and/or reckless.[10]

---

[6] https://www.forbes.com/sites/dariosabaghi/2022/01/12/study-how-popular-is-Delta 8-thc-in-the-united-states/?sh=5b82bbfd4cfc
[7] https://www.fda.gov/consumers/consumer-updates/5-things-know-about-Delta 8-tetrahydrocannabinol-Delta 8-thc
[8] https://www.federalregister.gov/documents/2019/10/31/2019-23749/establishment-of-a-domestic-hemp-production-program#citation-2-p58523.
[9] Id.
[10] Id.

13.     For those States and/or Indian Tribes who opt not to create a State Hemp Production Plan, the 2018 Farm Bill and its implementing regulations authorize the USDA to establish a plan to regulate hemp production ("USDA Hemp Production Plan") to govern State and/or Indian Tribes without their own Hemp Production Plan.[11]

14.     As with State Hemp Production Plans, the USDA Hemp Production Plan requires producers to apply for and be issued a license. Additionally, hemp produced by these licensees must be sampled and tested for THC concentration levels, and those levels must be at or below the acceptable hemp THC level.[12]

15.     A license issued under the USDA Hemp Production Plan will be immediately revoked if the licensee pleads guilty to or is convicted of any felony related to a controlled substance, has made any materially false statement to USDA or its representatives with a culpable mental state exceeding negligence, and/or is found to be growing cannabis exceeding the acceptable THC level with a culpable mental state greater than negligence.[13]

## III.     ILLINOIS' REGULATION OF INDUSTRIAL HEMP AND CANNABIS.

### A.     Illinois' Industrial Hemp Act.

16.     The State of Illinois opted to enact its own State Hemp Production Plan, known as the "Industrial Hemp Act" ("IL Industrial Hemp Act").[14]

17.     The IL Industrial Hemp Act defines "hemp" in the same manner as the 2018 Farm Bill.[15]

---

[11] Id.
[12] Id.
[13] Id.
[14] *See* 505 ILCS 89, *et seq.*
[15] *See 505 ILCS 89/5.*

18.     The IL Industrial Hemp Act, legalizes the cultivation, processing, possession, and use of Delta 8 products in Illinois, so long as the grower, seller, purchaser, and/or user complies with the laws and regulations governing such activities.

19.     The IL Industrial Hemp Act empowers the Illinois Department of Agriculture ("IL DOA") to craft the State's Hemp Production Plan, including the adoption of "rules necessary for the administration and enforcement of this Act in accordance with all applicable State and federal laws and regulations…"[16]

20.     Under IL DOA regulations governing the growth and processing of industrial hemp, all growers are subject to inspection and testing to verify that "delta-9 THC concentration does not exceed 0.3% on a dry weight basis," and a person authorized to cultivate industrial hemp cannot "ship or transport, or allow to be shipped or transported, any hemp product with a delta-9 THC concentration in excess of 0.3%."[17]

**B.     Illinois' Cannabis Regulation and Tax Act.**

21.     Additionally, Illinois passed the Cannabis Regulation and Tax Act ("IL CRTA"), which legalized the possession and use of cannabis by individuals aged 21 years or older.[18]

22.     The IL CRTA specifically excludes "industrial hemp as defined and authorized under the Industrial Hemp Act."[19]

23.     Under the IL CRTA, "cannabis sold in [Illinois] will be tested, labeled, and subject to additional regulation to ensure that purchasers are informed and protected" and "purchasers will

---

[16] 505 ILCS 89/15.
[17] Ill. Admin. Code., tit. 8, §1200.50(e) & §1200.100(c) (2024).
[18] *See* 410 ILCS 705 *et seq.*
[19] 410 ILCS 705/1-10.

be informed of any known health risks associated with the use of cannabis, as concluded by evidence-based, peer reviewed research."[20]

24.     The IL CRTA empowers the IL DOA to enact regulations over, among other activities, the packaging and labeling of cannabis products.[21]

### C.     Illinois Food, Drug and Cosmetic Act.

25.     The IL DOA labeling regulations require, among other things, cannabis products to conform to the labeling requirements of the Illinois Food, Drug and Cosmetic Act ("IL FDCA") and "include the total milligram content of THC and CBD…"[22]

26.     Under those same regulations, packaging of cannabis products cannot contain information that is false or misleading, and is required to bear specific warning statements, including:

> This product contains cannabis and is intended for use by adults 21 and over. Its use can impair cognition and may be habit forming. This product should not be used by pregnant or breastfeeding women. It is unlawful to sell or provide this item to any individual, and it may not be transported outside the State of Illinois. It is illegal to operate a motor vehicle while under the influence of cannabis. Possession or use of this product may carry significant legal penalties in some jurisdictions and under federal law.[23]

27.     The IL FDCA defines a "label" as a "display or written, printed or graphic matter upon the immediate container of any article," which must appear "on the outside container or wrapper, if any there be, of the retail package of such article, or is easily legible through the outside container or wrapper."[24]

---

[20] 410 ILCS 705/105(b)(5 & 6).
[21] 410 ILCS 705/55-21(a).
[22] Ill. Admin. Code tit. 8, §1300.920(c) & (d) (2024).
[23] Ill. Admin. Code tit. 8, §1300.930(c) & §1300.940(b)(1) (2024).
[24] 410 ILCS 620/2.8 (2024).

28.    The IL FDCA defines "advertisement" as "all representations disseminated in any manner or by any means other than by labeling, to induce or which are likely to induce, directly or indirectly, the purchase of food, drugs, devices or cosmetics."[25]

29.    An advertisement "shall be deemed to be false if it is false or misleading in any particular."[26]

30.    Under the IL FDCA, it is prohibited to: (a) manufacture, sell, or deliver a misbranded drug; (b) misbrand a drug; and/or (c) disseminate a false advertisement.[27]

31.    The IL FDCA describes a drug as "misbranded" if, among other problems: (a) its labeling is false or misleading in any particular; (b) it contains cannabis and the label fails to bear "the name and quantity or proportion of such substance or derivative and in juxtaposition therewith the statement 'Warning-May be habit forming'; (c) if its labeling fails to provide adequate instructions for use and/or adequate warnings against use in unsafe dosages or methods; and/or (d) it contains cannabis and is dispensed in violation of the Illinois Controlled Substances Act. [28]

32.    The Illinois Department of Public Health ("IL DPH") has promulgated regulations governing the labeling of drugs in addition to the requirements contained within the IL FDCA. Under those regulations, the labeling of a drug is misleading if, among other things, it fails "to reveal the proportion of, or other fact with respect to, an ingredient present in such drug, when such proportion or other fact is material in light of the representation that such ingredient is present in such drug…"[29]

---

[25] 410 ILCS 620/2.12 (2024).
[26] 410 ILCS 620/20(a) (2024).
[27] 410 ILCS 620/3.1-3.3, 3.5 & 3.7 (2024)
[28] 410 ILCS 620/15 & 16(c) (2024)
[29] Illinois Admin. Code, tit. 77, §720.50(y) (2024).

33.     As the statutes and regulations described above clearly demonstrate, Illinois' General Assembly and various enforcement agencies believe that products containing more than 0.3% of THC, *i.e.,* cannabis products, pose enough risk to public health and safety that heightened licensing, testing, and labeling regulations are required.

34.     In contrast, under that same umbrella of federal and state laws, Delta 8 products can be legally sold in Illinois without abiding by the same laws and regulations that govern cannabis products—a situation that leaves consumers at the mercy of Delta 8 retailers, sellers, and distributors to be honest and accurate regarding the ingredients, side-effects, and potential dangers of such products.

35.     But if a Delta 8 product contains more than 0.3% active THC then it should, by law, comply with the statutory and regulatory requirements described above and a failure to do so constitutes both a violation of those laws and a deceptive business practice that defrauds and harms consumers who believe they are purchasing a Delta 8 product, not traditional cannabis.

## IV.     MISSOURI'S REGULATION OF INDUSTRIAL HEMP AND CANNABIS.

### A.  Missouri Hemp Products Are Regulated by the USDA.

36.     Unlike Illinois, Missouri does not currently have its own State Hemp Production Plan. Rather, individuals or entities interested in pursuing industrial hemp production in Missouri are required to apply through the USDA's Hemp Production Program.[30]

37.     Under the USDA's Hemp Production Program, hemp products sold in Missouri— including Delta 8 products—are required to comply with the requirement that they contain less than 0.3% active THC.

---

[30] https://agriculture.mo.gov/plants/industrial-hemp/

38.     Missouri law does not regulate the age at which hemp products may be purchased, dictate the labeling requirements for such products, nor mandate testing for how much active THC is actually included in hemp products.

**B.  The Missouri Constitution Legalized Marijuana for Adults Over 21 Years Old.**

39.     Article XIV, Section 2 of the Missouri Constitution states its purpose is to "make marijuana legal under state and local law for adults twenty-one years of age or older, and to control the commercial production and distribution of marijuana under a system that licenses, regulates, and taxes the businesses involved while protecting public health."[31]

40.     The Missouri Constitution's definition of marijuana excludes "industrial hemp, as defined by Missouri statute, or commodities or products manufactured from industrial hemp."[32]

41.     The Missouri Constitution further provides the Department of Health and Senior Services ("MO DHSS") is empowered to, among other actions: (1) grant, refuse, and/or revoke licenses for dispensing and selling marijuana; (2) develop regulations governing the cultivation, manufacture, dispensing and sale of marijuana; and (3) regulate the advertising and promotion of marijuana sales. [33]

42.     The Missouri Constitution <u>requires</u> the MO DHSS to issue rules governing, among other things: (1) testing, packaging, and labeling standards for marijuana and marijuana-infused products to ensure the public health; (2) labeling standards "that protect public health by requiring the listing of pharmacologically active ingredients, including but not limited [THC]"; and (3) packaging and labeling standards to ensure such items are not attractive to children, bear warning labels, and be child resistant to protect public health.[34]

---

[31] Mo. Const. Art. XIV, §2.1 (2024).
[32] Id. at §2.2(13).
[33] Id. at §2.4.
[34] Id.

43. The Missouri Constitution further provides that "[n]o person shall sell any product in a manner designed to cause confusion between marijuana or a marijuana-infused product and any product not containing marijuana."[35]

**C.    The MO DHSS Regulates the Labeling and Sale of Marijuana.**

44. The MO DHSS's Division of Cannabis Regulation ("MO DCR") administers the rules governing the production, distribution, and sale of marijuana in Missouri.

45. These regulations include rules dictating the content of packages, labels, and product design for marijuana and marijuana-infused products.[36]

46. The MO DCR regulations forbid any marijuana product from being "manufactured, packaged or labeled in a false or misleading manner, such as by inaccurately representing product ingredients."[37]

47. The MO DCR regulations further prohibit any marijuana product packaging from being "designed in such a way as to cause confusion between a marijuana product and any product not containing marijuana, such as where products or packaging are visually similar to any commercially similar product that does not contain marijuana."[38]

48. Taking such requirements a step further, the MO DCR regulations dictate that the word "marijuana" and one of several symbols be prominently displayed on every label, that all active and other ingredients be identified including the exact Delta-9 THC dosage, and the following warning: "Cognitive and physical impairment may result from the use of marijuana. Keep out of reach of children."[39]

---

[35] Id. at 2.9 (2024).
[36] *See* 19 C.S.R. §100-1.120 (2024).
[37] Id. at §100-1.120(1).
[38] Id.
[39] Id.

49.     The MO DCR requires that all labels be submitted to the MO DCR for review and approval prior to use.[40]

50.     The above constitutional and regulatory provisions clearly demonstrate that Missouri draws a sharp distinction between industrial hemp products like Delta 8 products—which are largely unregulated—and marijuana and marijuana-infused products—which are tightly regulated from cultivation through sale.

51.     The MO DHSS has recognized that unregulated Delta 8 products pose a threat to public health, stating "we do acknowledge the potential and ongoing public health impact of unregulated THC products…The department has increased its emphasis on regulatory mechanisms that protect health and children in order to minimize any contribution of the regulated cannabis market to such incidents…As of right now, there is no such protective framework for unregulated THC products."[41]

52.     Under current Missouri law, consumers are left at the mercy of Delta 8 product manufacturers, distributors, and sellers to accurately represent the amount of active THC in their products because those products are not subject to the same constitutional and regulatory restrictions and requirements as traditional marijuana and marijuana-infused products.

53.     Such circumstances mean it is of paramount importance that Delta 8 product manufacturers, distributors, and sellers provide consumers with honest, accurate, and easily understood product information, including but not limited to a truthful representation of the amount of active THC in a product.

---

[40] Id. at §100-1.120(2).
[41] https://missouriindependent.com/2023/12/27/missouri-lawmakers-renew-push-to-regulate-Delta 8-thc-hemp-products/

54.     If Delta 8 product manufacturers, distributors, and sellers are actually selling Missouri consumers products that contain more than 0.3% active THC, they are not only putting the health and safety of such consumers at risk, but are also illegally bypassing the constitutional and regulatory restrictions placed upon products that are, in truth, marijuana.

## V.     STIIIZY, INC. DECEIVES CONSUMERS AND BYPASSES CANNABIS REGULATIONS BY MISREPRESENTING THE AMOUNT OF ACTIVE THC IN ITS PRODUCTS.

55.     Stiiizy sells a variety of cannabis and Delta 8 products (collectively "D8 Products") through stores and on-line sales throughout the United States, including in Illinois and Missouri.

56.     Stiiizy's D8 Products include Delta 8 vape pens and edibles, which, under federal, Illinois, and Missouri law, must contain less than 0.3% of active THC to qualify as Delta 8 hemp products.

57.     Stiiizy intentionally misrepresents to consumers that its D8 Products contain less than 0.3% of active THC via product labels, packaging, and advertisements.

58.     Actually, Stiiizy's D8 Products contain more than 0.3% of active THC.

59.     By engaging in this misconduct, Stiiizy has failed to comply with any of the packaging, labeling, warning, and/or advertising requirements applicable to cannabis and/or cannabis-infused products.

60.     Stiiizy represents through Certificates of Analysis that its D8 Products have been independently tested and that those results confirm its D8 Products contain less than 0.3% of active THC.

61.     In actuality, Stiiizy's D8 Products contain well over 0.3% of active THC. For example, a laboratory test performed on the Stiiizy Skywalker OG Pen D8 showed that the product contained 3.57% of Delta-9 THC, a percentage significantly above what is permitted by law.

62.     The labels, packages, advertisements, active ingredient information, and lab results provided to consumers by Stiiizy are false, misleading, and do not accurately reflect the amount of active THC in Stiiizy's D8 Products.

63.     Stiiizy D8 Products contain enough active THC that they qualify as cannabis under the 2018 Farm Bill, federal CSA, IL CRTA, Missouri Constitution, USDA regulations, and state enforcement agency regulations.

64.     Stiiizy D8 Products are misbranded and/or mislabeled under the IL FDCA.

65.     Stiiizy D8 Products are advertised in a misleading way to consumers under the IL FDCA.

66.     Stiiizy D8 Products are mispackaged and/or mislabeled under MO DCR regulations.

67.     Stiiizy D8 Products are advertised in a misleading way to consumers under MO DCR regulations.

68.     Stiiizy D8 Products lack any of the protections afforded consumers as a result of the licensing, testing, labeling, warning, and advertising restrictions applicable to cannabis products, meaning consumers are being placed at increased health, safety, and medical risk by Stiiizy D8 Products that are, in fact, a controlled substance.

69.     Reasonable consumers rely upon the false, deceptive, and misleading representations made on the packaging, labeling, and advertising for Stiiizy D8 Products.

70.     Reasonable consumers would not purchase the Stiiizy D8 Products if they knew that the representations on the packaging, labeling, and advertising of Stiiizy D8 Products was false.

71.     Stiiizy intends for consumers to rely upon the false, deceptive, and misleading representations made in its packaging, labeling, and advertising for Stiiizy D8 Products.

72.     Stiiizy profits financially as a result of its misconduct.  As intended, consumers rely upon Stiiizy's misrepresentations and false advertisements about its D8 Products and purchase the D8 Products.

73.     Stiiizy profits from falsely, deceptively, and unlawfully packaging, labeling, and advertising its D8 Products because it saves the burden and expense of complying with the far more extensive regulations and requirements placed upon cannabis products as opposed to Delta 8 products.

74.     Absent Stiiizy's misrepresentations and omissions regarding the level of active THC of its D8 Products, consumers would not purchase the D8 Products.

75.     As one of the nation's largest cannabis product manufacturers, Stiiizy is well-aware of the THC requirements for all types of products, including Delta 8, CBD, and traditional cannabis, yet is willfully disobeying those requirements for its own profit and to the detriment of consumers.

## **THE PARTIES**

76.     Plaintiff Byron is a resident of the State of Illinois.

77.     On Friday, February 16, 2024, Plaintiff Byron purchased a Delta 8 Stiiizy Starter Pack, which is a Stiiizy D8 Product manufactured, distributed, advertised, and/or sold by Stiiizy, for full retail price at Vape X in Swansea, Illinois, which is located within St. Clair County, Illinois.

78.     Plaintiff Byron relied upon the accuracy of the representations made on the packaging and labeling of the Delta 8 Stiiizy Starter Pack, including but not limited to representations regarding the percentage of active THC in the product.

14

79.     Plaintiff Byron relied upon the purported lab results showing the Delta 8 Stiiizy Starter Pack was in compliance with the Delta 8 THC levels mandated by the 2018 Farm Bill, Illinois Industrial Hemp Act, and their implementing regulations.

80.     Plaintiff Byron would not have purchased the Delta 8 Stiiizy Starter Pack had she known the advertisements, labels, and/or test results were false and misleading.

81.     Unbeknownst to Plaintiff Byron, the Delta 8 Stiiizy Starter Pack she purchased contained more than 0.3% of Delta-9 THC on a dry weight basis.

82.     The Delta 8 Stiiizy Starter Pack purchased by Plaintiff Byron was worthless and illegal because it did not contain less than 0.3% of Delta-9 THC and did not comply with the applicable state and federal laws governing the advertisement and sale of cannabis.

83.     The Delta 8 Stiiizy Starter Pack purchased by Plaintiff Byron was mispackaged, mislabeled, and misleadingly advertised under Illinois law because it qualified as cannabis.

84.     Plaintiff Berry is a resident of the State of Missouri.

85.     On February 16, 2024, Plaintiff Berry purchased a Delta 8 Stiiizy Starter Pack, which is a Stiiizy D8 Product manufactured, distributed, advertised, and/or sold by Stiiizy, for full retail price at Green Dragon CBD in Chesterfield, Missouri, which is located within St. Louis County, Missouri.

86.     Plaintiff Berry relied upon the accuracy of the representations made on the packaging and labeling of the Delta 8 Stiiizy Starter Pack.

87.     Plaintiff Berry relied upon the purported lab results showing the Delta 8 Stiiizy Starter Pack was in compliance with the Delta 8 THC levels mandated by the 2018 Farm Bill and Missouri law.

88.     Plaintiff Berry would not have purchased the Delta 8 Stiiizy Starter Pack had she known the advertisements, labels, and/or test results were false and misleading.

89.     Unbeknownst to Plaintiff Berry, the Delta 8 Stiiizy Starter Pack she purchased contained more than 0.3% of Delta-9 THC on a dry weight basis.

90.     The Delta 8 Stiiizy Starter Pack purchased by Plaintiff Berry was worthless and illegal because it did not contain less than 0.3% of Delta-9 THC and did not comply with the federal and state laws governing the advertisement and sale of cannabis.

91.     The Delta 8 Stiiizy Starter Pack purchased by Plaintiff Berry was mispackaged, mislabeled, and misleadingly advertised under Missouri law because it qualified as marijuana.

92.     Defendant Stiiizy is a Delaware corporation with its principal place of business in Los Angeles County, California.

93.     Plaintiffs represent the thousands of consumers in Illinois and Missouri who purchased Stiiizy's D8 Products based upon the misrepresentations being made in Stiiizy's advertising, labeling, and packaging. The Delta 8 market is a multi-million dollar industry and is growing exponentially each year in terms of both customers and profits.

## JURISDICTION & VENUE

94.     This Court has subject matter jurisdiction pursuant the Class Action Fairness Act, 28 U.S.C. §1332(d), because this Complaint is being filed pursuant to Federal Rule of Civil Procedure 23, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and Plaintiff Byron is a citizen of Illinois and Plaintiff Berry is a citizen of Missouri, while Stiiizy is a citizen of Delaware and California.

95.     Personal jurisdiction over Stiiizy is proper pursuant to 735 ILCS 5/2-209(a), the Illinois Long Arm Statute, because, as described throughout this Complaint, Stiiizy has transacted business in Illinois and committed tortious acts in Illinois.

96.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged below occurred in this judicial district.

## CLASS ACTION ALLEGATIONS

97.     Plaintiffs bring this action as a class action pursuant Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of himself and the following Classes:

## I.    DEFINITION OF THE CLASSES

98.     Plaintiffs seeks certification of the following classes (collectively "Classes"):

(a) **Illinois Class:** All persons who bought one or more of the same or similar D8 Products purchased by Plaintiff Byron identified above in the State of Illinois who have a receipt or are otherwise identified in a verified way (*i.e.,* through customer purchase and/or loyalty records maintained by Stiiizy and/or credit card receipts) within the appropriate statute of limitations until the date of certification. Excluded from this Class are any directors, officers, or employees of Stiiizy, Plaintiff's counsel, members of their immediate families, and any director, officer, or employee of any entity in which Stiiizy has a controlling interest and legal representative, heirs, successors, or assigns of any such person, and the judicial officers and their immediate family members and court staff assigned to this case.

(b) **Missouri Class:** All persons who bought one or more of the same or similar D8 Products purchased by Plaintiff Berry identified above in the State of Missouri who have a receipt or are otherwise identified in a verified way (*i.e.,* through customer purchase and/or loyalty records maintained by Stiiizy and/or credit card receipts) within the appropriate statute of limitations until the date of certification. Excluded from this Class are any directors, officers, or employees of Stiiizy, Plaintiff's counsel, members of their immediate families, and any director, officer, or employee of any entity in which Stiiizy has a controlling interest and legal representative, heirs, successors, or assigns of any such person, and the judicial officers and their immediate family members and court staff assigned to this case.

## II.    CLASS ACTION ALLEGATIONS

99.    Certification of the Classes is appropriate because common questions of law or fact predominate over any questions affecting only individual members, and thus a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

100.    **Numerosity:** The Classes consist of thousands of consumers who purchased Stiiizy D8 Products in Illinois and Missouri, making the Classes so numerous that joinder of all members is impracticable. The exact number or identification of the Class Members is presently unknown. The identity of the Class Members is ascertainable and can be determined based on Defendant's records.

101.    **Predominance of Common Questions:** Common questions of fact and law are shared by the Classes, and these common questions predominate over any individual questions unique to Plaintiffs or fellow Class members. These common questions of fact and law include but are not limited to:

a.  Whether Stiiizy's D8 Products contain more than 0.3% active THC;
b.  Whether Stiiizy's D8 Products qualify as cannabis, as opposed to industrial hemp or Delta 8 Products, based upon their levels of active THC;
c.  Whether Stiiizy's D8 Product packages were false, deceptive, and/or misleading under Illinois and/or Missouri law;
d.  Whether Stiiizy's D8 Product labels were false, deceptive, and/or misleading under Illinois and/or Missouri law;
e.  Whether Stiiizy's D8 Product advertisements were false, deceptive, and/or misleading under Illinois and/or Missouri law;
f.  Whether Stiiizy intentionally and falsely represented the THC content of its D8 Products to consumers;
g.  Whether Stiiizy failed to abide by all relevant federal and state laws and regulations governing the distribution, sale, and/or advertising of hemp and/or cannabis products; and
h.  Whether Stiiizy negligently misrepresented the contents of its D8 Products under Illinois and/or Missouri law.

102.    **Typicality:** Plaintiffs' claims are typical of the claims asserted by members of the Classes in that they are based on the same products, underlying facts and circumstances, and questions of law.

103.    **Adequacy:** Plaintiffs will fairly and adequately protect the interests of members of the Classes. Plaintiffs have no conflicts of interest with other members of the Classes and have retained competent and experienced counsel to represent them in this action.

104.    **Superiority:** Pursuing this lawsuit as a class action would be fair, efficient, and superior to other methods of adjudication. Plaintiffs and members of the Classes were damaged as a result of Stiiizy's deceptive, unlawful, and unfair conduct. Because of the size of the individual Class Members' claims, no Class Member could afford to seek legal redress for the wrongs identified in this Complaint. Without the class action vehicle, the Classes would have no reasonable remedy and would continue to suffer losses, as Stiiizy continues to engage in and profit from deceptive and unlawful conduct. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

105.    Plaintiffs and the Classes do not anticipate any issues in the management of this lawsuit as a class action.

## CAUSES OF ACTION

## COUNT I – VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
## ILLINOIS CLASS

106.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

107.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Deceptive Practices Act") provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practices described in Section 2 of the "Uniform Deceptive Trade Practices Act"…in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2 (2024).

108.    The Deceptive Practices Act defines "trade" and "commerce" to include "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of [Illinois]." 815 ILCS 505/1(f) (2024).

109.    Under the Deceptive Practices Act, Stiiizy has engaged in trade and commerce in Illinois by selling its D8 Products throughout the state, including the Stiiizy D8 Product purchased by Plaintiff Byron, because its D8 Products qualify as personal property and/or a "thing of value" that Stiiizy advertised, sold, offered for sale, and/or distributed in the State of Illinois.

110.    Stiiizy has violated the Deceptive Practices Act by deceiving and misleading Illinois consumers about the amount of active THC in its D8 Products, which is higher than the 0.3% permitted under the 2018 Farm Bill, IL Industrial Hemp Act, and/or IL DOA regulations governing the advertising, distribution, and/or sale of hemp products in the State of Illinois, described in detail above.

111.    Stiiizy has violated the Deceptive Practices Act by concealing, suppressing, and/or omitting the material fact that its D8 Products contain higher than the 0.3% active THC permitted

under the 2018 Farm Bill, IL Industrial Hemp Act, and/or IL DOA regulations governing the advertising, distribution, and/or sale of hemp products in the State of Illinois, described in detail above.

112.    Stiiizy has violated the Deceptive Practices Act by omitting from its D8 Product packaging and labeling the information required by the IL CRTA and IL FDCA, as described above, which is mandated for D8 Products that actually qualify as cannabis, which the Illinois legislature has deemed necessary "to ensure that purchasers are informed and protected…and will be informed of any known health risks associated with the use of cannabis…."

113.    Specifically, Stiiizy has, among other unlawful conduct:

a.    concealed, suppressed, and/or omitted from its D8 Product packaging, advertising, and labels the warning statement required by the IL FDCA implementing regulation at Title 8, §1300.930(c) & §1300.940(b)(1);

b.    misleadingly advertised its D8 Products by failing to accurately convey the amount of active THC present in the Product;

c.    misleadingly advertised its D8 Products by failing to identify them as cannabis based upon the amount of active THC within those products;

d.    misbranded its D8 Products by falsely labeling them as hemp products instead of cannabis;

e.    misbranded its D8 Products by using labels that fail to accurately identify the name and quantity or proportion of THC in the product along with required warning statements;

f.    misbranded its D8 Products by failing to provide instructions or use and/or warnings against unsafe dosages or methods that are applicable to cannabis products;

g.    misbranded its D8 Products by dispensing what are actually cannabis products in violation of the Illinois Controlled Substances Act; and

h.    mislabeled its D8 Products because those labels fail to reveal the proportion of or other facts with respect to an ingredient present in the drug, when that information is material, in violation of the IL DPH regulations described above.

114.    Stiiizy intended for consumers, including members of the Illinois Class, to rely upon the false and misleading packages, labels, and advertisements for its D8 Products, and to be deceived into believing they were purchasing Delta 8 products, not cannabis.

115.    Stiiizy intended for consumers, including members of the Illinois Class, to be deceived by the concealment, suppression, and/or omission of key information from its D8 Product packaging, labels, and/or advertisements and/or Stiiizy's failure to provide information required for cannabis—as opposed to industrial hemp—products, which gave the misleading and false impression Stiiizy's D8 Products were not cannabis when, in fact, the active THC levels within the D8 Products qualified as such.

116.    Stiiizy profited and continues to profit from its deceptive and misleading conduct by not having to comply with the testing, sampling, packaging, labeling, warning, and advertising requirements applicable to cannabis under federal and state laws and regulations.

117.    Stiiizy profited and continues to profit from its deceptive and misleading conduct because consumers, including members of the Illinois Class, are purchasing Stiiizy's D8 Products.

118.    Illinois consumers, including all Illinois Class members, relied and continue to rely upon the false and misleading information provided by Stiiizy on its D8 Product packages, labels, and advertising when making the decision to purchase the company's D8 Products.

119.    Illinois consumers, including all Illinois Class members, relied and continued to rely on the fact the packages, labels, and/or advertising for Stiiizy's D8 Products do not contain the information required for cannabis and/or cannabis-infused products on the company's D8 Products, giving the false and misleading impression those D8 Products are not actually cannabis and/or cannabis-infused.

120.     Illinois consumers, including all members of the Illinois Class, in reliance upon Stiiizy's deceptive, false, and misleading representations and/or omissions, were and continue to incur actual damages because they were and are purchasing products that are not what they purport to be and are, therefore, worthless.

121.     Illinois consumers, including all members of the Illinois class, were and continue to be damaged because they are unknowingly purchasing cannabis products without any of the warnings and/or information the Illinois legislature has deemed vital for public health, as evidenced by the laws and regulations enacted to keep consumers informed and aware of the contents and dangers of cannabis and/or cannabis-infused products.

122.     Plaintiff Byron and the Illinois Class would not have purchased the D8 Products but for Defendant's intentional and/or negligent misrepresentations and omissions of material facts described above. Plaintiff Byron and the Illinois Class members justifiably relied upon Defendant's negligent false representations and omissions of material facts.

WHEREFORE Plaintiff Byron, individually and on behalf of all members of the Illinois Class as defined above, respectfully request the Court enter judgment in their favor and against Defendant Stiiizy, Inc., award actual damages, attorneys' fees and costs, and further relief that the Court deems just and appropriate.

## COUNT II – FRAUD
## ILLINOIS CLASS

123.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

124.     As described in detail above, state and federal laws and regulations require Stiiizy to truthfully state the contents of its products and to accurately package, label, and advertise such products based upon the percentage of active THC within them.

125.    If Stiiizy's products contain more than 0.3% active THC they qualify as cannabis—not hemp—and must adhere to the laws and regulations governing cannabis. This is mandated by, at a minimum, the 2018 Farm Bill, the federal and Illinois Controlled Substances Act, the IL Industrial Hemp Act, IL DOA regulations, the IL CRTA, the IL FDCA, and IL DPH regulations.

126.    These laws and regulations make clear that the Illinois legislature intends for there to be a special relationship between Illinois consumers, including members of the Illinois Class, and companies growing, distributing, selling, and/or advertising hemp and/or cannabis products because these products invoke public health concerns and dangers. Companies like Stiiizy therefore have a duty to comply with these laws and regulations in the public's interest.

127.    In the course of distributing, selling, and advertising its D8 Products, Stiiizy made the following false statements and/or omissions of material fact:

    a.  Stiiizy concealed, suppressed, and/or omitted from its D8 Product packaging, advertising, and labels the warning statement required by the IL FDCA implementing regulation at Title 8, §1300.930(c) & §1300.940(b)(1);

    b.  Stiiizy falsely advertised its D8 Products by failing to accurately convey the amount of active THC present in the Product;

    c.  Stiiizy falsely advertised its D8 Products by failing to identify them as cannabis based upon the amount of active THC within those products;

    d.  Stiiizy falsely labeled its D8 Products as hemp products instead of cannabis;

    e.  Stiiizy falsely labeled its D8 Products by failing to accurately identify the name and quantity or proportion of THC in the product along with warning statements;

    f.  Stiiizy falsely sold its its D8 Products as hemp instead of cannabis products in violation of the Illinois Controlled Substances Act; and

    g.  Stiiizy falsely labeled its D8 Products because those labels fail to reveal the proportion of or other fact with respect to an ingredient present in the drug, when that information is material, in violation of IL DPH regulations described above.

128.    Stiiizy knew or should have known that it was falsely leading consumers, including Illinois Class members, to believe they were purchasing Delta 8 products with less than 0.3% active THC, when they were actually purchasing products containing such a high percentage of active THC they qualified as cannabis and/or cannabis-infused products under federal and state-controlled substances acts.

129.    Stiiizy intended for consumers, including Illinois Class members, to rely upon Stiiizy's false representations and/or omissions so that those consumers would purchase D8 Products.

130.    Illinois consumers, including Illinois Class members, justifiably relied upon the information contained or omitted, in Stiiizy's D8 Product packaging, labels, and advertisements because such information is highly regulated by state and federal law and should, therefore, be trustworthy and accurate.

131.    Illinois consumers, including all members of the Illinois Class, in reliance upon Stiiizy's false representations and/or omissions, were and continue to be damaged because they were and are purchasing products that are not what they purport to be and are, therefore, worthless.

132.    Illinois consumers, including all members of the Illinois class, were and continue to be damaged because they are unknowingly purchasing cannabis products without any of the warnings and/or information the Illinois legislature has deemed vital for public health, as evidenced by the laws and regulations enacted to keep consumers informed and aware of the contents and dangers of cannabis and/or cannabis-infused products.

133.    Plaintiff Byron and the Illinois Class would not have purchased the D8 Products but for Defendant's intentional and/or negligent misrepresentations and omissions of material facts

described above. Plaintiff Byron and the Illinois Class members justifiably relied upon Defendant's negligent false representations and omissions of material facts.

WHEREFORE Plaintiff Byron, individually and on behalf of all members of the Illinois Class as defined above, respectfully request the Court enter judgment in their favor and against Defendant Stiiizy, Inc., award actual damages, attorneys' fees and costs, any other damages available under law or statute, and any further relief that the Court deems just and appropriate.

## COUNT III – NEGLIGENT MISREPRESENTATION
## ILLINOIS CLASS

134.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

135.    As described in detail above, state and federal laws and regulations impose a duty upon Stiiizy to truthfully state the contents of its products and to accurately package, label, and advertise such products based upon the percentage of active THC within them.

136.    If Stiiizy's products contain more than 0.3% active THC they qualify as cannabis—not hemp—and must adhere to the laws and regulations governing cannabis. This is mandated by, at a minimum, the 2018 Farm Bill, the federal and Illinois Controlled Substances Act, the IL Industrial Hemp Act, IL DOA regulations, the IL CRTA, the IL FDCA, and IL DPH regulations.

137.    In the course of distributing, selling, and advertising its D8 Products, Stiiizy made the following false or misleading statements and/or omissions of material fact with careless disregard and/or negligence in ascertaining whether such statements and/or omissions were truthful and accurate:

   a. Stiiizy concealed, suppressed, and/or omitted from its D8 Product packaging, advertising, and labels the warning statement required by the IL FDCA implementing regulation at Title 8, §1300.930(c) & §1300.940(b)(1);

b.  Stiiizy falsely and/or misleadingly advertised its D8 Products by failing to accurately convey the amount of active THC present in the Product;

c.  Stiiizy falsely and/or misleadingly advertised its D8 Products by failing to identify them as cannabis based upon the amount of active THC within those products;

d.  Stiiizy falsely and/or misleadingly labeled its D8 Products as hemp products instead of cannabis;

e.  Stiiizy falsely and/or misleadingly labeled its D8 Products by failing to accurately identify the name and quantity or proportion of THC in the product along with warning statements;

f.  Stiiizy falsely and/or misleadingly sold its its D8 Products as hemp instead of cannabis products in violation of the Illinois Controlled Substances Act; and

g.  Stiiizy falsely and/or misleadingly labeled its D8 Products because those labels fail to reveal the proportion of or other fact with respect to an ingredient present in the drug, when that information is material, in violation of IL DPH regulations described above.

138.  Stiiizy acted carelessly and/or negligently in determining whether its D8 Products contained 0.3% or less of active THC, and allowed Illinois consumers, including  Illinois Class members, to believe they were purchasing Delta 8 products with less than 0.3% active THC, regardless of whether those products actually contained a percentage of active THC that qualified them as cannabis and/or cannabis-infused products under federal and state law.

139.  Stiiizy intended for consumers, including Illinois Class members, to rely upon Stiiizy's false and/or misleading representations and/or omissions so that those consumers would purchase D8 Products.

140.  Illinois consumers, including Illinois Class members, justifiably relied upon the information contained or omitted in Stiiizy's D8 Product packaging, labels, and advertisements because such information is highly regulated by state and federal law and should, therefore, be trustworthy and accurate.

141.    Illinois consumers, including members of the Illinois Class, in reliance upon Stiiizy's false and/or misleading representations and/or omissions, were and continue to be damaged because they were and are purchasing products that are not what they purport to be and are, therefore, worthless.

142.    Illinois consumers, including members of the Illinois class, were and continue to be damaged because they are unknowingly purchasing cannabis products without any of the warnings and/or information the Illinois legislature has deemed vital for public health, as evidenced by the laws and regulations enacted to keep consumers informed and aware of the contents and dangers of cannabis and/or cannabis-infused products.

143.    Plaintiff Byron and the Illinois Class would not have purchased the D8 Products but for Defendant's intentional and/or negligent misrepresentations and omissions of material facts described above. Plaintiff Byron and the Illinois Class members justifiably relied upon Defendant's negligent false representations and omissions of material facts.

144.    As a direct result of Defendant's negligent conduct, Plaintiff and Class Members have suffered actual damages and ascertainable loss to be determined at trial.

WHEREFORE Plaintiff Byron, individually and on behalf of all members of the Illinois Class as defined above, respectfully request the Court enter judgment in their favor and against Defendant Stiiizy, Inc., award actual damages, attorneys' fees and costs, any damages available under the law and/or statute, and any further relief that the Court deems just and appropriate.

**COUNT IV – VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT
MISSOURI CLASS**

145.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

146.    Under the Missouri Merchandising Practices Act ("MMPA"),

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…in or from the state of Missouri, is declared to be an unlawful practice…Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement, or solicitation.

R.S.Mo. §407.020.1 (2024).

147.    The MMPA defines "merchandise" as "any objects, wares, goods, commodities, intangibles, real estate, or services…" R.S.Mo. §407.010(4) (2024).

148.    The MMPA defines "trade or commerce" as "the advertising, offering for sale, sale, or distribution, or any combination thereof, of any services and any property, tangible or intangible, real or personal, or mixed, and any other article, commodity, or thing of value wherever situated. The terms 'trade' and 'commerce' include any trade or commerce directly or indirectly affecting the people of this state." R.S.Mo. §407.010(7) (2024).

149.    Under the MMPA, Stiiizy's D8 Products qualify as merchandise and the distribution, sale, and/or advertising of those products within Missouri and to Missouri consumers, including members of the Missouri Class, qualifies as "trade and commerce."

150.    Stiiizy violated the MMPA by deceiving and misleading Missouri consumers about the amount of active THC in its D8 Products, which is higher than the 0.3% permitted under the 2018 Farm Bill, USDA regulations, the Missouri Constitution, and MO DCR regulations governing the advertising, distribution, and/or sale of hemp products in the State of Missouri, described in detail above.

151.    Stiiizy violated the MMPA by concealing, suppressing, and/or omitting the material fact that its D8 Products contain higher than the 0.3% active THC permitted under the 2018 Farm Bill, USDA regulations, the Missouri Constitution, and MO DCR regulations governing the

advertising, distribution, and/or sale of hemp products in the State of Missouri, described in detail above.

152.    Stiiizy violated the MMPA by omitting from its D8 Product packaging and labeling the information required by the USDA and MO DCR regulations, as described above and which is mandated for D8 Products that actually qualify as cannabis, and in direct contravention of the Missouri Constitution.

153.    Specifically, Stiiizy has, among other unlawful conduct:

a.    Violated Missouri Constitution Article XIV, §2.9, which mandates that "[n]o person shall sell any product in a manner designed to cause confusion between marijuana or a marijuana-infused product and any product not containing marijuana";

b.    Deceptively and falsely advertised its D8 Products by failing to accurately convey the amount of active THC present in the Product;

c.    Deceptively and falsely advertised its D8 Products by failing to identify them as cannabis based upon the amount of active within those products;

d.    Deceptively packaged, labeled, and/or advertised its D8 Products containing more than 0.3% of active THC in violation of MO DCR regulations which forbid any marijuana product from being "manufactured, packaged or labeled in a false or misleading manner, such as by inaccurately representing product ingredients";

e.    Deceptively packaged, labeled, and advertised its D8 Products containing more than 0.3% of active THC in violation of MO DCR regulations forbidding marijuana product packaging from "being designed in such a way as to cause confusion between a marijuana product and any product not containing marijuana, such as where products or packaging are visually similar to any commercially similar product that does not contain marijuana";

f.    Deceptively packaged, labeled, and advertised its D8 Products containing more than 0.3% of active THC in violation of MO DCR regulations requiring such products to use the word "marijuana" and prominently display one of several approved symbols on the label, making clear the product is marijuana;

g.    Deceptively packaged, labeled, and advertised its D8 Products containing more than 0.3% of active THC in violation of MO DCR regulations by failing to accurately identify the name and quantity or proportion of THC in the product along with warning statements; and

     h.   Deceptively selling its D8 Products as hemp products when in actuality those Products are actually cannabis in violation of the federal Controlled Substances Act and USDA regulations.

154.    Stiiizy intended for consumers, including members of the Missouri Class, to rely upon the false and misleading packages, labels, and advertisements for its D8 Products, and to be deceived into believing they were purchasing Delta 8 products, not cannabis.

155.    Stiiizy intended for consumers, including members of the Missouri Class, to be deceived by the concealment, suppression, and/or omission of key information from its D8 Product packaging, labels, and/or advertisements and/or Stiiizy's failure to provide information required for cannabis—as opposed to industrial hemp—products, which gave the misleading and false impression Stiiizy's D8 Products were not cannabis when, in fact, the active THC levels within the D8 Products qualified as such.

156.    Stiiizy profited and continues to profit from its deceptive and misleading conduct by not having to comply with the testing, sampling, packaging, labeling, warning, and advertising requirements applicable to cannabis under federal and state laws and regulations.

157.    Stiiizy profited and continues to profit from its deceptive and misleading conduct because consumers, including members of the Missouri Class, are purchasing Stiiizy's D8 Products.

158.    Missouri consumers, including all Missouri Class members, relied and continue to rely upon the false and misleading information provided by Stiiizy on its D8 Product packages, labels, and advertising when making the decision to purchase the company's D8 Products.

159.    Missouri consumers, including all Missouri Class members, relied, and continued to rely on the fact the packages, labels, and/or advertising for Stiiizy's D8 Products do not contain the information required for cannabis and/or cannabis-infused products on the company's D8

Products, giving the false and misleading impression those D8 Products are not actually cannabis and/or cannabis-infused.

160. Missouri consumers, including all members of the Missouri Class, in reliance upon Stiiizy's deceptive, false, and misleading representations and/or omissions, were and continue to incur actual damages because they were and are purchasing products that are not what they purport to be and are, therefore, worthless.

161. Missouri consumers, including all members of the Missouri class, were and continue to be damaged because they are unknowingly purchasing cannabis products without any of the warnings and/or information the Missouri Constitution and/or regulatory agencies have deemed vital for public health, as evidenced by the laws and regulations enacted to keep consumers informed and aware of the contents and dangers of cannabis and/or cannabis-infused products.

162. Plaintiff Berry and the Missouri Class would not have purchased the D8 Products but for Defendant's intentional and/or negligent misrepresentations and omissions of material facts described above. Plaintiff Berry and the Missouri Class members justifiably relied upon Defendant's negligent false representations and omissions of material facts.

WHEREFORE Plaintiff Berry, individually and on behalf of all members of the Missouri Class as defined above, respectfully request the Court enter judgment in their favor and against Defendant Stiiizy, Inc., award actual damages, attorneys' fees and costs, any damages available under applicable law and/or statutes, and any further relief that the Court deems just and appropriate.

## COUNT V – FRAUD
## MISSOURI CLASS

163. Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

164.    As described in detail above, state and federal laws and regulations require Stiiizy to truthfully state the contents of its products and to accurately package, label, and advertise such products based upon the percentage of active Delta-9 THC within them.

165.    If Stiiizy's products contain more than 0.3% active THC they qualify as cannabis—not hemp—and must adhere to the laws and regulations governing cannabis. This is mandated by, at a minimum, the 2018 Farm Bill, the federal Controlled Substances Act, the Missouri Constitution, USDA regulations, and the MO DHSS's DCR regulations.

166.    These laws and regulations make clear that the Missouri legislature intends for there to be a special relationship between Missouri consumers, including members of the Missouri Class, and companies growing, distributing, selling, and/or advertising hemp and/or cannabis products because these products invoke public health concerns and dangers. Companies like Stiiizy therefore have a duty to comply with these laws and regulations in the public's interest.

167.    In the course of distributing, selling, and advertising its D8 Products, Stiiizy knowingly and intentionally made the following false representations and/or omissions of material fact:

a.   Stiiizy falsely sold its D8 Products in a manner designed to cause confusion between marijuana or a marijuana-infused product and any product not containing marijuana in violation of Missouri Constitution Article XIV, §2.9 by selling D8 Products with more than 0.3% active THC as hemp products;

b.   Stiiizy falsely advertised its D8 Products by omitting accurate information regarding the amount of active THC present in the Product, which was high enough to qualify such Products as cannabis;

c.   Stiiizy falsely advertised its D8 Products by failing to identify them as cannabis based upon the amount of active THC within those Products;

d.   Stiiizy falsely packaged, labeled, and/or advertised its D8 Products containing more than 0.3% of active THC in violation of MO DCR regulations which forbid any marijuana product from being "manufactured, packaged or labeled in a false or misleading manner, such as by inaccurately representing product ingredients";

e.  Stiiizy falsely packaged, labeled, and advertised its D8 Products containing more than 0.3% of active THC in violation of MO DCR regulations forbidding marijuana product packaging from "being designed in such a way as to cause confusion between a marijuana product and any product not containing marijuana, such as where products or packaging are visually similar to any commercially similar product that does not contain marijuana";

f.  Stiiizy falsely packaged, labeled, and advertised its D8 Products containing more than 0.3% of active THC in violation of MO DCR regulations requiring such products to use the word "marijuana" and prominently display one of several approved symbols on the label, making clear the product is marijuana;

g.  Stiiizy falsely packaged, labeled, and advertised its D8 Products containing more than 0.3% of active THC in violation of MO DCR regulations by failing to accurately identify the name and quantity or proportion of THC in the product along with warning statements; and

h.  Stiiizy falsely sold its D8 Products as hemp products when in actuality those Products are actually cannabis in violation of the federal Controlled Substances Act and USDA regulations.

168.    The representations and omissions were false when made because Stiiizy's D8 Products contain more than 0.3% active THC.

169.    Stiiizy knew that it was falsely leading consumers, including Missouri Class members, to believe they were purchasing Delta 8 products with less than 0.3% active THC, when they were actually purchasing products containing such a high percentage of active THC they qualified as cannabis and/or cannabis-infused products under federal and state-controlled substances acts.

170.    Stiiizy's false statements and omissions were and are material because there is a significant difference between Delta 8 products—as evidenced by their almost unregulated status in Missouri—and marijuana products, which are highly regulated. The difference in approach and oversight demonstrates that the amount of active THC in a product is considered material from both a consumer fraud and public health perspective.

171.    Stiiizy intended for consumers, including Missouri Class members, to rely upon Stiiizy's false representations and/or omissions so that those consumers would purchase D8 Products.

172.    Given that Delta 8 products are essentially unregulated in Missouri, consumers are forced to rely upon accurate and truthful information from product sellers like Stiiizy regarding the contents and effect of Delta 8 products. Missouri consumers have no way of knowing if the information provided by Stiiizy in its D8 Product packaging, labeling, and/or advertising is false.

173.    Rather, Missouri consumers, including Missouri Class members, relied and continue to rely on the statements made by Stiiizy in its D8 Product packaging, labeling, and/or advertisements when purchasing what those consumers believe to be Delta 8 products.

174.    Missouri consumers, including Missouri Class members, justifiably had a right to rely upon the information contained, or not contained, in Stiiizy's D8 Product packaging, labels, and advertisements because such information is regulated by state and federal law and should, therefore, be trustworthy and accurate.

175.    Missouri consumers, including members of the Missouri Class, in reliance upon Stiiizy's false representations and/or omissions, were and continue to be damaged because they were and are purchasing products that are not what they purport to be and are, therefore, worthless.

176.    Missouri consumers, including members of the Missouri class, were and continue to be damaged because they are unknowingly purchasing cannabis products without any of the warnings and/or information the Missouri Constitution and regulatory agencies have deemed vital for public health, as evidenced by the laws and regulations enacted to keep consumers informed and aware of the contents and dangers of cannabis and/or cannabis-infused products.

177.    Plaintiff Berry and the Missouri Class would not have purchased the D8 Products but for Defendant's intentional and/or negligent misrepresentations and omissions of material facts described above. Plaintiff Berry and the Missouri Class members justifiably relied upon Defendant's negligent false representations and omissions of material facts.

WHEREFORE Plaintiff Berry, individually and on behalf of all members of the Missouri Class as defined above, respectfully request the Court enter judgment in their favor and against Defendant Stiiizy, Inc., award damages, attorneys' fees and costs, any damages available under applicable law and/or statutes, and any further relief that the Court deems just and appropriate.

## COUNT VI – NEGLIGENT MISREPRESENTATION
## MISSOURI CLASS

178.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

179.    As described in detail above, state and federal laws and regulations impose a duty upon Stiiizy to truthfully state the contents of its products and to accurately package, label, and advertise such products based upon the percentage of active THC within them. Stiiizy provides the information required by these laws and regulations in the course of its business, which includes selling, distributing, and/or advertising its D8 Products.

180.    If Stiiizy's products contain more than 0.3% active THC they qualify as cannabis—not hemp—and must adhere to the laws and regulations governing cannabis. This is mandated by, at a minimum, the 2018 Farm Bill, the federal Controlled Substances Act, the Missouri Constitution, USDA regulations, and the MO DHSS's DCR regulations.

181.    In the course of distributing, selling, and advertising its D8 Products, Stiiizy failed to exercise reasonable care regarding the truthfulness of its packaging, labeling, and/or advertising and therefore made the following false or misleading statements and/or omissions of material fact:

a. Stiiizy deceptively and falsely advertised its D8 Products containing more than 0.3% active THC in violation of Missouri Constitution Article XIV, §2.9, which mandates that "[n]o person shall sell any product in a manner designed to cause confusion between marijuana or a marijuana-infused product and any product not containing marijuana";

b. Stiiizy deceptively and falsely advertised its D8 Products by failing to accurately convey the amount of active THC present in the Product;

c. Stiiizy deceptively and falsely advertised its D8 Products by failing to identify them as cannabis based upon the amount of active THC within those products;

d. Stiiizy deceptively packaged, labeled, and/or advertised its D8 Products containing more than 0.3% of active THC in violation of MO DCR regulations which forbid any marijuana product from being "manufactured, packaged or labeled in a false or misleading manner, such as by inaccurately representing product ingredients";

e. Stiiizy deceptively packaged, labeled, and advertised its D8 Products containing more than 0.3% of active THC in violation of MO DCR regulations forbidding marijuana product packaging from "being designed in such a way as to cause confusion between a marijuana product and any product not containing marijuana, such as where products or packaging are visually similar to any commercially similar product that does not contain marijuana";

f. Stiiizy deceptively packaged, labeled, and advertised its D8 Products containing more than 0.3% of active THC in violation of MO DCR regulations requiring such products to use the word "marijuana" and prominently display one of several approved symbols on the label, making clear the product is marijuana;

g. Stiiizy deceptively packaged, labeled, and advertised its D8 Products containing more than 0.3% of active THC in violation of MO DCR regulations by failing to accurately identify the name and quantity or proportion of THC in the product along with warning statements; and

h. Stiiizy deceptively selling its D8 Products as hemp products when in actuality those Products are actually cannabis in violation of the federal Controlled Substances Act and USDA regulations.

182. Stiiizy intentionally provided the information contained (or in some instances omitted) from its D8 Product packages, labels, and advertisements, and allowed Missouri consumers, including Missouri Class members, to believe they were purchasing Delta 8 products with less than 0.3% active THC, regardless of whether those products actually contained a

percentage of active THC that qualified them as cannabis and/or cannabis-infused products under federal and state law.

183.    Stiiizy intended for consumers, including Missouri Class members, to rely upon Stiiizy's false and/or misleading representations and/or omissions so that those consumers would purchase D8 Products.

184.    Missouri consumers, including Missouri Class members, justifiably relied upon the information contained, or not contained, in Stiiizy's D8 Product packaging, labels, and advertisements because such information is highly regulated by state and federal law and should, therefore, be trustworthy and accurate.

185.    Missouri consumers, including members of the Missouri Class, in reliance upon Stiiizy's false and/or misleading representations and/or omissions, were and continue to be damaged because they were and are purchasing products that are not what they purport to be and are, therefore, worthless.

186.    Missouri consumers, including members of the Missouri Class, were and continue to be damaged because they are unknowingly purchasing cannabis products without any of the warnings and/or information the Missouri Constitution and regulatory agencies have deemed vital for public health, as evidenced by the laws and regulations enacted to keep consumers informed and aware of the contents and dangers of cannabis and/or cannabis-infused products.

187.    Plaintiff Berry and the Missouri Class would not have purchased the D8 Products but for Defendant's intentional and/or negligent misrepresentations and omissions of material facts described above. Plaintiff Berry and the Missouri Class members justifiably relied upon Defendant's negligent false representations and omissions of material facts.

188.    WHEREFORE Plaintiff Berry, individually and on behalf of all members of the Missouri Class as defined above, respectfully request the Court enter judgment in their favor and against Defendant Stiiizy, Inc., award damages, attorneys' fees and costs, any damages available under applicable law and/or statutes, and any further relief that the Court deems just and appropriate.

**COUNT VII – UNJUST ENRICHMENT**
**THE CLASSES**

189.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

190.    Plaintiffs and members of the Classes directly or indirectly conferred a benefit on Defendant by overpaying for the D8 Products at prices that were artificially inflated by Defendant's misrepresentations and omissions of material facts described above.

191.    As a result of Defendant's fraud and deception, Plaintiffs and members of the Classes were not aware of the facts concerning D8 Products and did not benefit from Defendant's misconduct.

192.    Defendant knowingly benefitted from their unjust conduct. They sold D8 Products for more than what the D8 Products were worth, at the expense of Plaintiffs and members of the Classes.

193.    Defendant readily accepted and retained these benefits from Plaintiffs and members of the Classes.

194.    It is inequitable and unconscionable for Defendant to retain these benefits because Defendant made numerous material misrepresentations and omissions to consumers concerning the amount of active THC in its D8 Products as described above.

195.    Plaintiffs and members of the Classes would not have purchased the D8 Products but for Defendant's misrepresentations and omissions of material facts described above.

196.    Plaintiffs and members of the Classes do not have an adequate remedy at law.

197.    Equity cannot in good conscience permit the Defendant to retain the benefits that they derived from Plaintiffs and members of the Classes through unjust and unlawful acts.

198.    WHEREFORE Plaintiffs, individually and on behalf of all members of the Classes as defined above, respectfully request the Court enter judgment in their favor and against Defendant Stiiizy, Inc., award restitution or disgorgement of the amount of the Defendant's unjust enrichment is necessary and any further relief that the Court deems just and appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Classes, pray for judgment against Defendant, granting the following relief:

a.    An order certifying this case as a class action and appointing Plaintiffs' counsel to represent the Classes and Plaintiffs as a representative of the Classes;

b.    All recoverable compensatory and other damages sustained by Plaintiffs and the Classes;

c.    Actual, treble, punitive, and/or statutory damages for injuries suffered by Plaintiffs and the Class in the maximum amount permitted by applicable law;

d.    An order (1) requiring Defendant to cease its wrongful conduct as set forth above immediately; (2) enjoining Defendant from continuing to misrepresent and conceal material information about the D8 Products; and (3) requiring Defendant to refund Plaintiffs and all members of the Classes the funds paid to Defendant for the D8 Products;

e.      Payment of reasonable attorneys' fees and costs, as may be allowable under applicable law; and

f.      Such other relief as the Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury on all causes of action so triable.

Respectfully submitted,

**THE BRUNING LAW FIRM, LLC**

*/s/ Jamie L. Boyer*
Jamie L. Boyer, #6281611
Ryan L. Bruning, #6304640
Patrick T. Hinrichs, #6304801
555 Washington Ave, Suite 600
St. Louis, MO 63101
Tel: (314) 218-2776
Fax: (314) 735-8020
Jamie@bruninglegal.com
Ryan@bruninglegal.com
Patrick@bruninglegal.com
***Attorneys for Plaintiff***