IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| TAYLOR BYRON and TAYLOR BERRY, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:24-cv-01082-MAB |
| | ) | |
| v. | ) | Magistrate Judge Mark A. Beatty |
| | ) | |
| STIIIZY, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2), OR, ALTERNATIVELY, RULES 12(b)(6) AND 9(b)**

By: */s/ Livia M. Kiser*
Attorneys for Defendant

Livia M. Kiser
lkiser@kslaw.com

KING & SPALDING LLP
110 N. Wacker Drive, Suite 3800
Chicago, IL 60606
Telephone:    312-764-6911
Facsimile:    312-995-6330

Dated: June 6, 2024

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 1

      A.    Hemp Regulation and Products .............................................................. 1

      B.    Plaintiffs' purchases & "Laboratory Test" ........................................... 2

      C.    Plaintiffs' Claims ................................................................................... 3

LEGAL STANDARD ..................................................................................................... 3

ARGUMENT .................................................................................................................. 5

I.      THIS COURT LACKS PERSONAL JURISDICTION OVER STIIIZY. ........................ 5

      A.    Stiiizy Has Not "Purposely Availed" Itself of the Privilege of Conducting Business in Illinois. .............................................................. 6

      B.    Plaintiffs' Claims Do Not Arise From Stiiizy's "Forum-Related Activities." .............................................................................................. 7

      C.    Exercising Personal Jurisdiction Over Stiiizy in These Circumstances Would be Unfair and Unjust. ...................................................................... 8

II.      PLAINTIFFS' FRAUD CLAIMS FAIL TO SATISFY RULE 9(B) (COUNTS II & V). ............................................................................................................. 9

III.      PLAINTIFFS' STATUTORY CLAIMS FAIL TO SATISFY RULE 9(B) (COUNTS I & IV). ........................................................................................ 12

IV.      PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIMS FAIL AS A MATTER OF LAW (COUNTS III & VI). ................................................... 14

      A.    Plaintiffs' Claims are Barred by the Economic Loss Doctrine. ............ 14

      B.    Plaintiffs Have Not Stated Plausible Claims. ....................................... 15

V.      PLAINTIFFS FAIL TO STATE A VIABLE CLAIM FOR UNJUST ENRICHMENT (COUNT VII). .......................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3DGS, LLC v. Chai Tr. Co., LLC*,
   2020 WL 7353406 (N.D. Ill. Dec. 15, 2020) ............................................................7

*Acosta-Aguayo v. Walgreen Co.*,
   2023 WL 2333300 (N.D. Ill. Mar. 2, 2023) ...........................................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................4

*Ass'n Benefit Serv., Inc. v. Caremark RX, Inc.*,
   493 F.3d 841 (7th Cir. 2007) .................................................................................16

*B.D. by & through Myer v. Samsung SDI Co.*,
   91 F.4th 856 (7th Cir. 2024) ...................................................................................6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................4

*In re Beyond Meat, Inc., Protein Content Mktg. & Sales Pracs. Litig., No. 23 C*
   *669*, 2024 WL 726838 (N.D. Ill. Feb. 21, 2024) ...............................................10, 11

*C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*,
   626 F. Supp. 2d 837 (N.D. Ill. 2009) .......................................................................6

*Castaneda v. Amazon.com, Inc.*,
   679 F. Supp. 3d 739 (N.D. Ill. 2023) .....................................................................13

*Dannix Painting, LLC v. Sherwin-Williams Co.*,
   732 F.3d 902 (8th Cir. 2013) .............................................................................14, 15

*Dueker v. Gill*,
   175 S.W.3d 662 (Mo. Ct. App. 2005) .....................................................................15

*Duncan v. Savannah, LLC*,
   637 S.W.3d 633 (Mo. Ct. App. 2021) .....................................................................13

*Exec. Bd. of Mo. Baptist Convention v. Windermere Baptist Conference Ctr.*,
   280 S.W.3d 678 (Mo. App. W.D. 2009) .................................................................16

*Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*,
   412 F.3d 745 (7th Cir. 2005) .................................................................................10

*First Midwest Bank, N.A. v. Stewart Title Guar. Co.*,
    843 N.E.2d 327 (Ill. 2006) .......................................................................5, 10, 15

*Gerdes v. John Hancock Mut. Life Ins. Co.*,
    712 F. Supp. 692 (N.D. Ill. 1989) ........................................................................14

*Gillam v. Abro Kalamazoo 3, Inc.*,
    2024 WL 230952 (N.D. Ill. Jan. 22, 2024) ............................................................4

*Goldstein v. Johnson & Johnson*,
    No. 1:18-CV-20341-KMM, 2019 WL 289290 (S.D. Fla. Jan. 21, 2019).................8

*Harris v. Kashi Sales, LLC*,
    609 F. Supp. 3d 633 (N.D. Ill. 2022) ...................................................................11

*Harris v. Smith*,
    250 S.W.3d 804 (Mo. Ct. App. 2008) ...................................................................15

*Hennessey v. Gap, Inc.*,
    86 F.4th 823 (8th Cir. 2023) ................................................................................12

*Jennings v. SSM Health Care St. Louis*,
    355 S.W.3d 526 (Mo. Ct. App. 2011) ...................................................................10

*JF Enterprises, LLC v. Fifth Third Bank*,
    824 F. Supp. 2d 818 (N.D. Ill. 2011) .....................................................................9

*Kinman v. Kroger Co.*,
    604 F. Supp. 3d 720 (N.D. Ill. 2022) .....................................................................9

*Laidlaw Waste Sys., Inc. v. Mallinckrodt, Inc.*,
    925 F. Supp. 624 (E.D. Mo. 1996)...................................................................10, 11

*Matlin v. Spin Master Corp.*,
    921 F.3d 701 (7th Cir. 2019) ..............................................................................7, 8

*McIntosh v. Walgreens Boots All., Inc.*,
    135 N.E.3d 73 (Ill. 2019) .....................................................................................12

*Midland States Bank v. Ygrene Energy Fund Inc.*,
    564 F. Supp. 3d 805 (E.D. Mo. 2021)......................................................................9

*Missouri v. Au Optronics Corp.*,
    787 F. Supp. 2d 1036 (N.D. Cal. 2011) ................................................................12

*Mold-A-Rama Inc. v. Collector-Concierge-Int'l*,
    451 F. Supp. 3d 881 (N.D. Ill. 2020) ......................................................................6

*Moore v. Charter Commc'ns, Inc.*,
    523 F. Supp. 3d 1046 (N.D. Ill. 2020) ........................................................4

*Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*,
    265 F.3d 601 (7th Cir. 2001) ..................................................................14

*Napleton's Arlington Heights Motors, Inc. v. FCA US LLC*,
    214 F. Supp. 3d 675 (N.D. Ill. 2016) ........................................................9

*Orix Credit All., Inc. v. Taylor Mach. Works, Inc.*,
    125 F.3d 468 (7th Cir. 1997) ..................................................................16

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) ...............................................................4, 5

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
    338 F.3d 773 (7th Cir. 2003) ..................................................................4

*Roberts v. Roberts*,
    580 S.W.3d 600 (Mo. Ct. App. 2019) ......................................................16

*Stein v. Clarifai, Inc.*,
    526 F. Supp. 3d 339 (N.D. Ill. 2021) ....................................................7, 8

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) ..................................................................5

*Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*,
    984 F.2d 915 (8th Cir. 1993) ..................................................................15

*Toulon v. Cont'l Cas. Co.*,
    877 F.3d 725 (7th Cir. 2017) ..................................................................16

*Webb v. Frawley*,
    906 F.3d 569 (7th Cir. 2018) ..................................................................4

*Wienhoff v. Conagra Brands, Inc.*,
    626 F. Supp. 3d 1015 (S.D. Ill. 2022) ......................................................11

*Wilson v. First Am. Title Co.*,
    790 F. Supp. 2d 828 (C.D. Ill. 2011) ......................................................15

**Statutes**

Illinois Consumer Fraud and Deceptive Business Practice Act.....................3, 12, 13, 16

Missouri Merchandising Practices Act .................................................3, 12, 13

**Other Authorities**

7 C.F.R. § 990.1 ...................................................................................................................1, 2

Federal Rule of Civil Procedure 12(b)...............................................................................3, 4, 8

Federal Rule of Civil Procedure 9(b)................................................................................ *passim*

## INTRODUCTION

Based on nothing more than conclusory allegations, Plaintiffs accuse Stiiizy, Inc., a California company, of misrepresenting the tetrahydrocannabinol ("THC") content of hemp-based products sold in Illinois and Missouri.  In support of their far-flung theory of widespread fraud and misrepresentation, Plaintiffs Taylor Byron (an Illinois resident) and Terry Berry (a Missouri resident) allege only that they each made a single purchase of the same Stiiizy-branded product at two separate retail stores—just one of which is in Illinois—that supposedly contained more than the allowable amount of active THC.  That inference, in turn, is based on a single alleged "laboratory test" conducted on a *different* Stiiizy-branded product—a test that was necessarily performed, if at all, in a manner that would not comply with federal and state regulations.

Plaintiffs' allegations thus compel the conclusion that the exercise of personal jurisdiction over Stiiizy would be improper.  In addition, Plaintiffs' conclusory allegations fall far short of stating plausible claims: Plaintiffs' fraud and state statutory claims fail to meet the heightened pleading standard under FRCP 9(b); Plaintiffs' negligent misrepresentation claims are barred by the economic loss doctrine; and Plaintiffs have otherwise failed to adequately plead negligent misrepresentation or unjust enrichment.  Accordingly, the Complaint should be dismissed.

## FACTUAL BACKGROUND

### A.    HEMP REGULATION AND PRODUCTS

As relevant here, both federal and state law permit the creation and sale of hemp products for consumer use, provided that the products contain no more than 0.3% delta-9 ("D9") THC on a "dry weight basis."  *See, e.g.*, 7 C.F.R. § 990.1.  Both the federal and state regulatory schemes account (and allow) for some degree of uncertainty and variability in the D9 THC concentration. *See id.*  Hemp producers are subject to myriad quality control and product sampling and testing requirements, many of which may vary across states.  Federal guidelines require sample specimens

to be collected for testing directly from the plant pre-harvest.  *See* Sampling Guidelines for Hemp, U.S. Domestic Hemp Production Program, at 2 (January 15, 2021).

The allegations in this case revolve around delta-8 ("D8") vape pens[1] and edibles—products that contain hemp-derived D8 THC.  *See* Compl. ¶¶ 5, 56.  These products also allegedly contain D9 THC ("active THC"), which can legally be present in D8 products provided there is not more than 0.3% active THC on a "dry weight basis."  *Id.*  According to Plaintiffs, Stiiizy intentionally misrepresented to consumers, through its product labels, packaging, advertisements, and Certificates of Analysis ("COAs"), that certain D8 products they purchased in Illinois or Missouri contained less than 0.3% active THC when Stiiizy knew or should have known that they contained more.  *Id.* ¶¶ 57, 60, 128.  Plaintiffs claim Stiiizy engages in this scheme to avoid the expense associated with complying with more stringent cannabis regulations.  *Id.* ¶¶ 73, 116.

### B.    PLAINTIFFS' PURCHASES & "LABORATORY TEST"

Plaintiff Byron is a resident of Illinois, who on February 16, 2024 purchased just one product—a "Delta 8 Stiiizy Starter Pack"—at "Vape X" in Swansea, Illinois.  Compl. ¶¶ 76–77. Plaintiff Berry, is a resident of Missouri, who claims she also purchased just one product, the Delta 8 Stiiizy Starter Pack, at a retail location in Chesterfield Missouri, "Green Dragon CBD."  *Id*. ¶¶ 85, 89.  Plaintiffs allege that the product they purchased contained more than 0.3% active THC and was misbranded because the "advertisements, labels, and/or test results" for that product purportedly falsely represented that it contained no more than 0.3% active THC.  *Id*. ¶¶ 80, 88.

Plaintiffs do not allege that they tested the THC content of the Delta 8 Stiiizy Starter Pack. Instead, Plaintiffs allege only in passing that a single undated "laboratory test performed" on a different product, the "Stiiizy Skywalker OG Pen D8"—a test that necessarily was done (if at all)

---

[1] Vape pens are generally small devices that consist of a battery attached to a cartridge that is filled with liquid concentrate and function to vaporize rather than burn the cartridge contents.

on the liquid content of the product, not on the plant itself pre-harvest as required by federal regulations—allegedly returned results showing that single product contained more than 0.3% active THC. *Id.* ⁋ 61. While the Complaint alleges that the D8 products purchased were "worthless" and "illegal," *id.* ⁋⁋ 82, 90, and that Plaintiffs "would not have purchased" them absent the alleged misrepresentations regarding THC content, *id.* ⁋⁋ 80, 88, Plaintiffs have not pleaded any personal injury or property damage.

Moreover, aside from conclusory statements regarding Stiiizy's alleged sale of D8 products in Illinois and Missouri, Plaintiffs' Complaint lacks any concrete facts regarding (1) the supposed falsity of the labeling, packaging, or COAs for the D8 products they purchased; (2) how Stiiizy "knew" the labeling, packaging, or COAs accompanying the D8 products contained supposedly false statements; or (3) Stiiizy's supposed intent or motivation to deceive Plaintiffs.

### C.   PLAINTIFFS' CLAIMS

Based on the allegations regarding the two (2) purchases and the unrelated "laboratory test," Plaintiffs assert seven (7) putative class claims. Three of the claims pertain only to the Illinois Class: violation of the Illinois Consumer Fraud and Deceptive Business Practice Act (Count I); Fraud (Count II); and Negligent Misrepresentation (Count III). Three of the claims pertain only to the Missouri Class: violation of the Missouri Merchandising Practices Act (Count IV); Fraud (Count V); and Negligent Misrepresentation (Count VI). Plaintiffs also assert a claim for Unjust Enrichment (Count VII) on behalf of both classes.

### LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), the Court may dismiss a Complaint for lack of personal jurisdiction. Courts in Illinois may exercise specific personal jurisdiction over a defendant only where the exercise of such jurisdiction comports with "the standard for federal due process"—*i.e.*, where "the defendant ha[s] sufficient contacts with the forum state 'such that the

- 3 -

maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Moore v. Charter Commc'ns, Inc.*, 523 F. Supp. 3d 1046, 1050 (N.D. Ill. 2020) (citation omitted). While "[a] complaint need not include facts alleging personal jurisdiction," "once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Importantly, "[s]pecific jurisdiction, unlike general jurisdiction, . . . is *claim*-specific: there must be personal jurisdiction over defendant as to each claim when considered separately." *Gillam v. Abro Kalamazoo 3, Inc.*, 2024 WL 230952, at *2 (N.D. Ill. Jan. 22, 2024) (emphasis added).

Further, to survive a motion to dismiss under Federal Rule 12(b)(6), a plaintiff "must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Webb v. Frawley*, 906 F.3d 569, 576 (7th Cir. 2018) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While a court must accept well-pleaded factual allegations as true, that tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)). And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, where, as here, plaintiffs' claims sound in fraud, they must comply with Federal Rule of Civil Procedure 9(b)'s heightened pleading standard and "must state with particularity the circumstances constituting fraud or mistake." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). The "particularity" requirement of Rule

9(b) is designed to discourage a "sue first, ask questions later" philosophy. *Id.* (citation omitted). "In adding flesh to the bones of the word particularity," the Seventh Circuit has explained that a plaintiff ordinarily must describe the "who, what, when, where, and how" of the fraud—"the first paragraph of any newspaper story." *Id.* at 441–42 (citation omitted).

## **ARGUMENT**

As a threshold matter, this Court cannot exercise specific personal jurisdiction over Stiiizy with respect to Plaintiffs' claims because Stiiizy is not located in Illinois and Plaintiffs' allegation regarding a single in-state purchase from an unrelated retailer is too thin a reed to support jurisdiction. In addition to the jurisdictional problem, Plaintiffs' claims are fatally deficient. *First*, Plaintiffs' common law fraud and state statutory claims—both of which are subject to the heightened pleading requirements of Rule 9(b)—plainly lack the requisite particularity to survive past the pleading stage. *Second*, Plaintiffs' negligent misrepresentation claims are not only barred by the economic loss doctrine, but also fail to sufficiently allege multiple elements of these claims under state law. *Finally*, Plaintiffs fail to state a valid claim for unjust enrichment.

## I.    THIS COURT LACKS PERSONAL JURISDICTION OVER STIIIZY.

For this Court to exercise specific personal jurisdiction[2] over a defendant, "[t]he defendant's contacts with the forum state must directly relate to the challenged conduct or transaction; [courts] therefore evaluate specific personal jurisdiction by reference to the particular conduct underlying the claims made in the lawsuit." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). "For specific personal jurisdiction, there must be: (1) purposeful availment—the defendant must have purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the forum; (2) relatedness—the alleged injury

---

[2] Plaintiffs do not (and could not) assert this Court has general personal jurisdiction over Stiiizy; indeed, they acknowledge that Stiiizy is a citizen of Delaware and California. *See* Compl. ¶ 94.

must arise out of or relate to the defendant's forum-related activities; and (3) fairness—the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *B.D. by & through Myer v. Samsung SDI Co., Ltd.*, 91 F.4th 856, 861 (7th Cir. 2024). With respect to Stiiizy, this case lacks all three requisite elements.

Plaintiffs' Complaint is replete with *conclusory allegations* regarding Stiiizy's alleged role in a supposed scheme to mislead consumers about the THC concentration of certain D8 products. But Plaintiffs' paper-thin allegation regarding a *single* Illinois-based purchase of a Stiiizy-branded product by one of the Plaintiffs is patently insufficient to establish that Stiiizy has engaged in any kind of sustained, litigation-related activity within the state. Accordingly, this Court lacks personal jurisdiction over Stiiizy, and the Complaint should be dismissed.

### A.   Stiiizy Has Not "Purposely Availed" Itself of the Privilege of Conducting Business in Illinois.

Plaintiffs' *only* allegation going to specific personal jurisdiction is the *conclusory* statement that "Stiiizy has transacted business in Illinois and committed tortious acts in Illinois." Compl. ¶ 95. That is insufficient for the purposes of establishing that Stiiizy has "purposefully availed" itself of this forum. *See, e.g.*, *Mold-A-Rama Inc. v. Collector-Concierge-Int'l*, 451 F. Supp. 3d 881, 889 (N.D. Ill. 2020) (no personal jurisdiction where defendant "did not take any action to purposefully direct any business activities toward Illinois or otherwise avail itself of the privilege of conducting business in the State"); *C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*, 626 F. Supp. 2d 837, 855–56 (N.D. Ill. 2009) (no purposeful availment absent allegations that defendant targeted Illinois residents for sale of goods).

Plaintiff Berry had no contact with—and purchased no products in—Illinois at all. Instead, she purchased a single, Stiiizy-branded product at a retailer in Missouri. Compl. ¶ 85. There can be no reasonable argument that Stiiizy, a non-Illinois resident, could somehow be subject to

specific personal jurisdiction in Illinois by virtue of the fact that an out-of-state Plaintiff purchased a product with Stiiizy's name on it *in another state*.  *See, e.g.*, *3DGS, LLC v. Chai Tr. Co., LLC*, 2020 WL 7353406, at *8 (N.D. Ill. Dec. 15, 2020).  In other words, nothing about Plaintiff Berry's alleged transaction in Missouri demonstrates that Stiiizy "purposefully availed" itself of the privilege of doing business in *Illinois*.

Plaintiff Byron's allegation regarding a single purchase of a Stiiizy-branded product in Illinois, Compl. ¶ 77, does not—without more—salvage personal jurisdiction.  Plaintiffs have acknowledged that "Stiiizy is a Delaware corporation with its principal place of business in California."  *Id*. ¶ 92.  And black-letter law confirms that "specific jurisdiction should not be exercised" over an out-of-state defendant "based on a single sale in a forum, *even when* a manufacturer or producer knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states."  *Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019) (quotation omitted) (emphasis added); *see also Stein v. Clarifai, Inc.*, 526 F. Supp. 3d 339, 344 (N.D. Ill. 2021) (same) (collecting cases).  A "single sale in [this] forum," by an unaffiliated retailer, is all Plaintiffs have alleged here.  That is insufficient to establish purposeful availment.

### B.    Plaintiffs' Claims Do Not Arise From Stiiizy's "Forum-Related Activities."

Any business Stiiizy conducts in Illinois that is not related to this lawsuit is not a valid basis for the exercise of personal jurisdiction.  *Matlin*, 921 F.3d at 706 (The relatedness "element is crucial—and '[w]e cannot simply aggregate all of a defendant's contacts with a state—no matter how dissimilar in terms of geography, time, or substance—as evidence of the constitutionally-required minimum contacts.'" (quoting *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997)).  Here, even taking the vague allegations that Stiiizy conducts some business in Illinois

at face value, Plaintiffs have not adequately alleged that such "business" is sufficiently related to their alleged economic injuries.  Nor could they.

Moreover, the one-off conduct that is alleged—that Plaintiff Byron purchased a single Stiiizy-branded product at an unaffiliated retail location in Illinois, Vape X—is plainly too attenuated to support a sweeping inference that Stiiizy conducted sufficient business activities "related" to Plaintiffs' claims to support jurisdiction.  *See, e.g.*, *Stein*, 526 F. Supp. at 344–45 (finding single or sporadic in-state purchase(s) insufficient to support personal jurisdiction over defendant) (collecting cases); *cf. Goldstein v. Johnson & Johnson*, No. 1:18-CV-20341-KMM, 2019 WL 289290, at *3 (S.D. Fla. Jan. 21, 2019) (rejecting the proposition "that the use of a company's brand name or logo within a particular state by itself constitutes sufficient contacts with that state for personal jurisdiction purposes").

### C.   Exercising Personal Jurisdiction Over Stiiizy in These Circumstances Would be Unfair and Unjust.

Lastly, and for similar reasons, the exercise of personal jurisdiction over Stiiizy in this case would "offend 'traditional notions of fair play and substantial justice.'"  *Matlin*, 921 F.3d at 705 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  There can be no reasonable argument that a single sale of a Stiiizy-branded product in *Missouri*, coupled with a single sale of a Stiiizy-branded product to a single Plaintiff in Illinois, is sufficient to establish that Stiiizy "should reasonably anticipate being haled into court" in Illinois.  *Stein*, 526 F. Supp. at 343 (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)); *see also id*. at 344–45 (collecting cases holding that single or sporadic in state sales are insufficient to establish personal jurisdiction).  That flaw goes to the heart of the due process inquiry and defeats personal jurisdiction in this case.

Because Plaintiffs have failed to sufficiently plead that Stiiizy has purposefully availed itself of this forum by engaging in sustained conduct related to Plaintiffs' claims, Plaintiffs' Complaint should be dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2).

## II.    PLAINTIFFS' FRAUD CLAIMS FAIL TO SATISFY RULE 9(B) (COUNTS II & V).

Relying solely on conclusory allegations regarding Stiiizy's supposed "know[ledge]" of the alleged misrepresentations regarding THC content in the D8 products at issue, Plaintiffs bring two claims for common law fraud under Illinois and Missouri law.  But sifting through the surplusage in Plaintiffs' Complaint, it is clear that Plaintiffs have fallen far short of their burden to plead fraud with particularity under Rule 9(b).

The elements of common law fraud in Illinois and Missouri are substantively identical.  *See JF Enterprises, LLC v. Fifth Third Bank*, 824 F. Supp. 2d 818, 823 n.1 (N.D. Ill. 2011); *Napleton's Arlington Heights Motors, Inc. v. FCA US LLC*, 214 F. Supp. 3d 675, 692 (N.D. Ill. 2016) ("[T]o assert a claim of common-law fraud under Illinois law, Plaintiffs must prove five elements: '(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from the reliance on the statement.'"); *Midland States Bank v. Ygrene Energy Fund Inc.*, 564 F. Supp. 3d 805, 822 (E.D. Mo. 2021) ("Under Missouri law, the elements of a claim of fraud are: "(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, (9) and his consequent and proximate injury.").  Both fraud claims are subject to Rule 9(b)'s heightened pleading standard, and Plaintiffs fail to meet it.  *See, e.g.*, *Kinman v. Kroger Co.*, 604 F. Supp. 3d

720, 731 (N.D. Ill. 2022) (plaintiff must describe the "who, what, when, where, and how of the fraud"); *Midland States Bank,* 564 F. Supp. 3d at 822 ("Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule.") (internal quotations omitted); *see also Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.,* 412 F.3d 745, 748–49 (7th Cir. 2005) (the particularity requirement "forces the plaintiff to conduct a careful pretrial investigation" and minimizes the risk of extortion that may come from a baseless fraud claim).

*First*, while the Complaint is littered with conclusory contentions that the representations regarding the THC content in the D8 products Plaintiffs purchased were "false," *see* Compl. ¶¶ 62, 69–72, 127, Plaintiffs fail to plead any plausible, concrete facts that support such alleged falsity. Buried in the nearly 200 paragraphs of Plaintiffs' Complaint is a single, one-paragraph allegation contending that an undated "laboratory test performed" by an unnamed lab on just one D8 product, "the Stiiizy Skywalker OG Pen D8," which neither Plaintiff alleges to have purchased, "showed that the product" contained more than the allowable amount of THC. Compl. ¶ 61. Setting aside that such alleged test could only have been performed on the liquid contents of a final product— and not directly on the plant pre-harvest as mandated by the relevant regulations—a vague allegation about a single test performed on a single D8 product that neither Plaintiff purchased is hardly sufficient to support Plaintiffs' sweeping theory of widespread "false" representations. *See, e.g.*, *In re Beyond Meat, Inc., Protein Content Mktg. & Sales Pracs. Litig., No. 23 C 669*, 2024 WL 726838, at *13 (N.D. Ill. Feb. 21, 2024).

*Second*, the Complaint fails to adequately allege knowledge. A complaint does not sufficiently allege knowledge where it includes only conclusory statements such as the defendant "knew" or "should have known" of the alleged fraud; rather, such sweeping allegations simply

mirror the elements of fraud.  *See, e.g.*, *Jennings v. SSM Health Care St. Louis*, 355 S.W.3d 526, 538 (Mo. Ct. App. 2011); *In re Beyond Meat*, 2024 WL 726838, at *13; *Laidlaw Waste Sys., Inc. v. Mallinckrodt, Inc.*, 925 F. Supp. 624, 635 (E.D. Mo. 1996).  But the Complaint here does exactly that—it includes only circular allegations of knowledge such as that "Stiiizy knew or should have known that it was falsely leading consumers" or "[i]n the course of distributing, selling, and advertising its D8 Products, Stiiizy knowingly and intentionally made the following false representations and/or omissions of material fact."  Compl. ¶¶ 128, 167, 169.  Again, however, Plaintiff fails to support these suppositions with any concrete facts, contending only that an after-the-fact (and necessarily flawed) test apparently commissioned by Plaintiffs and performed by an unnamed laboratory on a single D8 product indicated a higher amount of THC than the label represented.  *See* Compl. ¶ 61.  That allegation, of course, demonstrates absolutely nothing about what Stiiizy "knew" before the product entered the stream of commerce and nothing about the products Plaintiffs actually bought.  Without including more detailed factual allegations that would allow the Court to reasonably infer Stiiizy knew the alleged fraudulent statements were false when made, the Complaint has not properly alleged knowledge.  *See, e.g.*, *Laidlaw Waste*, 925 F. Supp. at 635.

*Finally*, the Complaint fails to adequately allege intent.  Courts have repeatedly held that allegations of a defendant's supposed knowledge of a misrepresentation do not sufficiently suggest fraudulent intent under Rule 9(b).  *E.g.*, *In re Beyond Meat*, 2024 WL 726838, at *13; *Wienhoff v. Conagra Brands, Inc.*, 626 F. Supp. 3d 1015, 1030 (S.D. Ill. 2022).  This is especially true where, as here, allegations of knowledge are qualified with "should have known" language.  *See, e.g.*, *Acosta-Aguayo v. Walgreen Co.*, No. 22-cv-00177, 2023 WL 2333300, at *7 (N.D. Ill. Mar. 2, 2023); Compl. ¶ 128.  Plaintiffs either conclusorily allege Stiiizy's "inten[t]" to induce consumer

reliance or attempt to imply fraudulent intent by leaning on Stiiizy's supposed knowledge of the falsity. *See* Compl. ¶¶ 129, 171 167. Such allegations are patently insufficient under Rule 9(b). *See Harris v. Kashi Sales, LLC*, 609 F. Supp. 3d 633, 644 (N.D. Ill. 2022) ("It is simply unreasonable to infer that because Kashi allegedly should have known the statements on its label were inaccurate, it intended [to] deceive Harris and other consumers."); *Weinhoff*, 626 F. Supp. 3d at 1030 ("Weinhoff merely alleged that Conagra's 'fraudulent intent is evidenced by knowledge that it replaced milkfat with palm oil, evidenced by the asterisk which is difficult for consumers like [Weinhoff] to notice.' The Court need not accept this conclusory allegation." (internal citation omitted)).

Plaintiffs' fraud claims should be dismissed.

### III.   PLAINTIFFS' STATUTORY CLAIMS FAIL TO SATISFY RULE 9(B) (COUNTS I & IV).

Plaintiffs also assert two statutory claims: one for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA") and one for violation of the Missouri Merchandising Practices Act (the "MMPA"). *See* Compl. ¶¶ 106–22; 145–62. Each of these claims sounds in fraud, meaning that both are subject to the heightened pleading standard under Rule 9(b). *See, e.g.*, *Hennessey v. Gap, Inc.*, 86 F.4th 823, 827 (8th Cir. 2023); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 787 F. Supp. 2d 1036, 2011 (N.D. Cal. 2011). And like Plaintiffs' fraud claims, their statutory claims fail to satisfy their pleading burden.

To plead a cause of action based on the ICFA, "a plaintiff must allege the following: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *McIntosh v. Walgreens Boots All., Inc.*, 135 N.E.3d 73, 80 (Ill. 2019). Under the

MMPA, a plaintiff must prove that he or she "(1) purchased merchandise . . . [f]rom [the defendant]; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful under the [MMPA]."[3] *Hennessey*, 86 F.4th at 827.

Plaintiffs have not alleged a violation of either statute because nothing in the Complaint plausibly suggests any deceptive act on the part of Stiiizy. Plaintiffs' theory of deception is that Stiiizy improperly omitted from the D8 product packaging the true THC content of the products. *See* Compl. ¶ 112 ("Stiiizy has violated the [ICFA] by omitting from its D8 Product packaging and labeling the information required by [law]."); *id.* ¶ 152 ("Stiiizy violated the MMPA by omitting from its D8 Product packaging and labeling the information required by [law]").

As set forth above, Plaintiffs do not allege that the products they actually purchased have been tested or that any test results demonstrate that those products were mislabeled. *See, supra*, Argument, II. In addition, Plaintiffs allege no facts supporting their conclusory allegation that Stiiizy *knew* the THC content supposedly exceeded the legal limit. Indeed, the Complaint directly undercuts that theory, alleging that the products included COAs from independent laboratories confirming the THC content was below the legal threshold. *See id.* ¶ 60. And the only basis for alleging that the THC content was unlawfully high is Plaintiffs' own noncompliant lab test of the liquid contents of a single D8 product they did not buy—an after-the-fact test result that Plaintiffs never allege Stiiizy had access to, much less *before* making the alleged omissions.

---

[3] The MMPA "declares unlawful the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." *Hennessey*, 86 F.4th at 827.

Without any factual support for the allegations that there were (a) a misrepresentation and (b) Stiiizy had knowledge of the allegedly unlawful THC content, there is no basis for finding any deceptive act that would support a claim for a violation of either state statute.  *See, e.g.*, *Duncan v. Savannah, LLC*, 637 S.W.3d 633, 643 (Mo. Ct. App. 2021) (a "claim of omission of a material fact [under the MMPA] requires proof that the undisclosed facts were known or would be known upon reasonable inquiry"); *Castaneda v. Amazon.com, Inc.*, 679 F. Supp. 3d 739, 752 (N.D. Ill. 2023) ("Knowledge is an essential part of any deception-based claim about an omission . . . To state [an ICF] claim based on an omission, the complaint also needs to allege that [the defendant] *knew* about the defect and omitted or concealed it knowing the truth.").  This deficiency is fatal to Plaintiffs' statutory claims and requires dismissal of Counts I and IV of the Complaint.

## IV.   PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIMS FAIL AS A MATTER OF LAW (COUNTS III & VI).

### A.   Plaintiffs' Claims are Barred by the Economic Loss Doctrine.

Plaintiffs claim that the D8 products at issue were "worthless and illegal," Compl. ¶¶ 82, 90, and that Plaintiffs "would not have purchased" them absent the alleged misrepresentations that the products contained less that 0.3% THC, *id.* ¶¶ 80, 88.  And while Plaintiffs hypothesize that D8 products containing higher than the allowable amount of active THC could generally pose a "risk" to consumers' "health and safety," *e.g.*, *id.* ¶ 54, they conspicuously fail to contend that they themselves suffered any personal injury, property damage, or health consequences as a result of their D8 product purchases.  That failure dooms their negligent misrepresentation claims under both Illinois and Missouri law.

The economic loss doctrine precludes recovery of purely economic losses under a tort theory such as negligent misrepresentation.  *See, e.g.*, *Gerdes v. John Hancock Mut. Life Ins. Co.*, 712 F. Supp. 692, 696 (N.D. Ill. 1989) ("Illinois law prohibits recovery of economic losses under

a tort theory."); *Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 905–06 (8th Cir. 2013) (In Missouri, "[t]he economic loss doctrine prohibits a commercial buyer of goods from seeking to recover in tort for economic losses[.]" (internal quotations omitted)). "In essence, the economic loss, or commercial loss, doctrine denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations." *Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 615 (7th Cir. 2001) (internal quotations and citations omitted). As the Eighth Circuit has explained, "although tort law is an appropriate vehicle for providing a recovery for physical injury to persons or to other property caused by defective goods, tort law should not be held to undermine the law of sales' balancing of the relationship between buyers and sellers regarding whether or not, and how well, products work." *Tioga Pub. Sch. Dist. No. 15 of Williams Cty., State of N.D. v. U.S. Gypsum Co.*, 984 F.2d 915, 918 (8th Cir. 1993).[4] Where, as here, Plaintiffs allege only that a product was somehow "dimin[ished] in value" by a purported misrepresentation, Plaintiffs cannot sustain a cause of action for negligent misrepresentation. *Dannix Painting*, 732 F.3d at 905 (quoting *Chi. Heights Venture v. Dynamit Nobel of Am., Inc.*, 782 F.2d 723, 727 (7th Cir. 1986)).

### B.      Plaintiffs Have Not Stated Plausible Claims.

To state a claim for negligent misrepresentation under either Illinois or Missouri law, Plaintiffs must establish, at a minimum, that (1) Stiiizy made a statement that was in fact false and (2) the statement was made with the intent to induce (and did in fact induce) consumers to act. *See, e.g.*, *Wilson v. First Am. Title Co.*, 790 F. Supp. 2d 828, 833–34 (C.D. Ill. 2011); *Harris v. Smith*, 250 S.W.3d 804, 808 (Mo. Ct. App. 2008). As explained in detail above, Plaintiffs have

---

[4] While "courts have recognized rare exceptions to the economic loss doctrine," none are applicable here. *Dannix Painting*, 732 F.3d at 905 (listing narrow exceptions under Missouri law); *see also First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 333–34 (Ill. 2006) (same under Illinois law).

failed to adequately allege either falsity or intent, which dooms their negligent misrepresentation claim as well.  *See, e.g.*, *Wilson*, 790 F. Supp. at 837; *Dueker v. Gill*, 175 S.W.3d 662, 670 (Mo. Ct. App. 2005).

Illinois law further requires that a plaintiff alleging negligent misrepresentation adequately allege that there exists a "duty on the party making the statement to communicate accurate information." *First Midwest Bank, N.A.*, 843 N.E.2d at 335.  And "[w]here, as here, purely economic damages are sought, this court has imposed a duty on a party to avoid negligently conveying false information *only* if the party is in the business of supplying information for the guidance of others in their business transactions." *Id*. (citations omitted) (emphasis added). Plaintiffs have not, and could not, adequately allege that Stiiizy had such a duty.  "Courts have consistently held that manufacturers of tangible noninformational goods . . . are not in the business of supplying information." *Orix Credit All., Inc. v. Taylor Mach*. *Works, Inc.*, 125 F.3d 468, 475–76 (7th Cir. 1997) (collecting cases).  Accordingly, Plaintiffs' Illinois claim for negligent misrepresentation fails for the independent (and equally fatal) reason that Plaintiffs cannot satisfy the duty element of that claim as a matter of law.

## V.  PLAINTIFFS FAIL TO STATE A VIABLE CLAIM FOR UNJUST ENRICHMENT (COUNT VII).

Plaintiffs style their remaining claim as one for "unjust enrichment" on behalf of both their Illinois and Missouri putative classes.  To the extent Plaintiffs purport to bring a class claim under Illinois law, however, that claim fails right out of the gate, as Illinois generally does not recognize a freestanding claim for unjust enrichment.  *See, e.g.*, *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 741 (7th Cir. 2017) ("Unjust enrichment does not constitute an independent cause of action.").  In any event, where, as here, Plaintiffs fail to state an underlying claim such as fraud or a violation of the ICFA, any claim for unjust enrichment necessarily fails.  *Id*. at 741–42; *see also Ass'n*

*Benefit Serv., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("when the plaintiff's particular theory of unjust enrichment is based on alleged fraudulent dealings and we reject the plaintiff's claims that those dealings, indeed, *were* fraudulent, the theory of unjust enrichment that the plaintiff has pursued is no longer viable").

Plaintiffs' claim for unjust enrichment under Missouri law fares no better. The essential elements of unjust enrichment in Missouri are: "(1) the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; and (3) that it would be unjust to allow the defendant to retain the benefit." *Roberts v. Roberts*, 580 S.W.3d 600, 605 (Mo. Ct. App. 2019). "The third element, unjust retention of the benefit, is considered the most significant and the most difficult of the elements. Mere receipt of benefits is not enough, absent a showing that it would be unjust for the defendant to retain the benefit." *Exec. Bd. of Mo. Baptist Convention v. Windermere Baptist Conference Ctr.*, 280 S.W.3d 678, 697 (Mo. Ct. App. 2009) (internal citations omitted). Even assuming that Stiiizy received some sort of benefit from a non-party's sale of the D8 products, Plaintiffs have failed to plead—other than in a wholly conclusory fashion—that the retention of that benefit would be somehow unfair. Because Plaintiffs' allegations are insufficient to state a claim for fraud, negligent misrepresentation, or violation of a state statute, they necessarily cannot demonstrate that it would be "unjust" for Stiiizy to retain any supposed benefit.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety.


By: */s/ Livia M. Kiser*
       Attorneys for Defendant

Livia M. Kiser
lkiser@kslaw.com

KING & SPALDING LLP
110 N. Wacker Drive, Suite 3800
Chicago, IL 60606
Telephone:    312-764-6911
Facsimile:    312-995-6330

Dated: June 6, 2024