IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TAYLOR BYRON and TAYLOR BERRY, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>STIIIZY, INC.,<br><br>      Defendant. | Case No. 3:24-CV-1082-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

In 2018, the Agricultural Improvement Act legalized certain hemp products, including "Delta-8" THC, provided they comply with strict tetrahydrocannabinol ("THC") content limitations. Taylor Byron and Taylor Berry (collectively, "Plaintiffs") allege that Defendant Stiiizy, Inc. ("Stiiizy") sells Delta-8 THC vape pens and edibles ("Delta-8 products") that exceed the THC threshold in violation of federal and state law. (Doc. 1 at ¶¶ 54-56, 135). Specifically, Plaintiffs claim Stiiizy intentionally markets and distributes Delta-8 products with THC levels above the legal limit to attract customers and to avoid compliance with stricter, more costly cannabis regulations. (*Id.* at ¶¶ 71-73, 114-117, 154-157).

This lawsuit, brought as a putative class action, raises several claims based on sales of Stiiizy Delta-8 products in Illinois and Missouri, including: (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Count I); (2) common

Page 1 of 18

law fraud as to an Illinois class (Count II); (3) negligent misrepresentation as to an Illinois class (Count III); (4) violation of the Missouri Merchandising Practices Act ("MMPA") (Count IV); (5) common law fraud as to a Missouri class (Count V); (6) negligent misrepresentation as to a Missouri class (Count VI); and (7) unjust enrichment as to both classes (Count VII). (*Id.* at ¶¶ 106-197).

Stiiizy now moves pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure to dismiss the Complaint for lack of personal jurisdiction. (Doc. 19). Alternatively, Stiiizy seeks dismissal under Rules 12(b)(6) and 9(b) for failure to state a claim. (*Id.*). Plaintiffs filed a response in opposition to the motion (Doc. 20), and Stiiizy filed a timely reply (Doc. 23). For the reasons set forth below, the Court grants Stiiizy's motion in part and denies it in part.

## FACTUAL BACKGROUND

With the passage of the Agriculture Improvement Act in 2018, certain hemp products, including Delta-8 THC, were legalized—provided the products contain no more than 0.3% Delta-9 THC on a "dry-weight basis." *See, e.g.*, 7 C.F.R. § 990.1. Cannabis products exceeding this threshold remain classified as a Schedule I controlled substance under federal law. *Id.*

Stiiizy is a Delaware corporation with its principal place of business in California. (Doc. 1 at ¶ 54). It manufactures and distributes a range of cannabis and Delta-8 hemp products—vape pens and edibles—under the "Stiiizy" brand. (*Id.* at ¶ 55). Stiiizy markets these products as compliant with the federal THC threshold, representing in its labeling, advertising, and packaging that the products contain less than 0.3% Delta-9 THC on a

dry-weight basis. (*Id.* at ¶¶ 56-56, 60-63).

Plaintiff Byron, a citizen of Illinois, purchased a Delta-8 Stiiizy Starter Pack from a retailer in Swansea, Illinois, relying on product labeling and representations about compliance with federal THC limits. (*Id.* at ¶¶ 77-79). Similarly, Plaintiff Berry, a Missouri citizen, purchased a Stiiizy product from a store in Chesterfield, Missouri, under the same understanding. (*Id.* at ¶ 85). Both Plaintiffs allege that independent lab testing revealed THC levels exceeding the federal threshold, with one product, the "Skywalker OG Pen D8," containing 3.57% Delta-9 THC—more than 10 times the legal limit. (*Id.* at ¶ 61).

Plaintiffs contend they would not have purchased the products had they known they exceeded the THC limit and allege Stiiizy knowingly misrepresented compliance to avoid the cost of regulatory testing. (*Id.* at ¶¶ 114-117, 129, 154). In addition to marketing mislabeled products, Plaintiffs further allege that Stiiizy engaged in targeted promotional efforts to establish a foothold in Illinois, including distributing its products through Illinois retailers, hosting promotional events in Illinois, and advertising directly to Illinois consumers. (Doc. 20 at 2-3).

This putative class action is brought on behalf of similarly situated consumers in Illinois and Missouri who allege they were misled by Stiiizy's representations regarding the THC content of its products. (Doc. 1 at ¶¶ 98-102). Plaintiff Byron seeks to represent a class of Illinois citizens who purchased Stiiizy products in Illinois, while Plaintiff Berry seeks to represent a class of Missouri citizens who purchased Stiiizy products in Missouri. (*Id.* at ¶ 97).

**LEGAL STANDARDS**

I.     **Federal Rule of Civil Procedure 12(b)(2)**

A motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure challenges the court's personal jurisdiction over a defendant. Once personal jurisdiction is challenged, the plaintiff bears the burden of establishing that jurisdiction is proper. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In such cases, courts consider whether the plaintiff has made a *prima facie* showing of jurisdiction, accepting all well-pleaded facts as true and resolving any factual dispute in the plaintiff's favor. *Id.*

II.     **Federal Rule of Civil Procedure 12(b)(6)**

When evaluating a motion to dismiss filed under Rule 12(b)(6), the Court must consider whether the complaint states a claim for relief that is "plausible" on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires more than labels and conclusions; the allegations must allow the court to reasonably infer that the defendant is liable on the assumption that all the allegations in the complaint are true, "even if doubtful in fact." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555 (internal citations omitted). While the court accepts as true all well-pleaded facts and draws reasonable inferences in the plaintiff's favor, it does not accept legal conclusions. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013).

In deciding a motion to dismiss under Rule 12(b)(6) with allegations that sound in fraud, courts must apply the heightened pleading standard imposed by Rule 9(b). *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (citing *Vanzant v.*

*Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019)). Plaintiffs are required to state with particularity, the "who, what, when, where, and how" of the alleged fraud. *Id.* However, "knowledge" and "intent" may be alleged generally. FED. R. CIV. P. 9(b).

## DISCUSSION

The Court first addresses Stiiizy's Motion to Dismiss under Rule 12(b)(2). As a threshold matter, the Court must determine whether it has personal jurisdiction over Stiiizy. If personal jurisdiction is lacking, the Court cannot proceed to consider dismissal under Rules 12(b)(6) and 9(b). *See Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103, 1104 (N.D. Ill. 2015). If jurisdiction is established, the Court will then evaluate the adequacy of Plaintiffs' claims.

### I.     Motion to Dismiss for Lack of Personal Jurisdiction

"As a procedural matter, federal courts look to state law in determining the bounds of their jurisdiction over a party." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017) (citing FED. R. CIV. P. 4(k)(1)(A)). Because the Illinois long-arm statute permits a court to exercise jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment, the state statutory and federal constitutional requirements merge. *Id.* (citing *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)).

"The Due Process Clause of the Fourteenth Amendment limits the power of a court to render a judgment over nonresident defendants." *Id.* at 552 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). Thus, personal jurisdiction is only proper if the defendant has sufficient minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial

justice." *Id.* While the defendant's physical presence in the forum State is not required, there must be sufficient minimum contacts such that one "should reasonably anticipate being haled into court there." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Personal jurisdiction can be established through general or specific jurisdiction. General jurisdiction refers to the forum in which a party, either a person or corporation, is "essentially at home." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). Specific jurisdiction covers those cases where a party is not "at-home" in the forum state, but has sufficient "minimum contacts" with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 621 (7th Cir. 2022).

Here, Plaintiffs have conceded that this Court cannot exercise general personal jurisdiction over Stiiizy, as it is not "at home" in Illinois. Thus, the Court focuses its analysis on whether it has specific personal jurisdiction over Stiiizy.

"There are three requirements for a court to exercise specific personal jurisdiction over a defendant: (1) the defendant must have purposefully availed itself of the privilege of conducting business in the forum state or directed its activities at the forum state; (2) the plaintiff's injury must have arisen out of the defendant's forum-related activities; and (3) the Court's exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 398.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and

the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quotation omitted). "The mere fact that a defendant's conduct affects a plaintiff with connections to the forum State is not sufficient to establish jurisdiction." *Id.* Rather, the out-of-state defendant must purposefully direct its activities at residents of the forum, and the litigation must "arise out of contacts that the 'defendant *himself*' creates with the forum state." *Curry*, 949 F.3d at 396 (quoting *Burger King*, 471 U.S. at 475). The defendant's relationship with the plaintiff or a third party, standing alone, is insufficient to create the necessary "minimum contacts." *Walden*, 134 S. Ct. at 1123.

### A. Purposeful Availment

Stiiizy first argues that it has not purposely availed itself of the privilege of conducting business in Illinois. Stiiizy asserts that Plaintiffs' only allegation as to specific personal jurisdiction is the conclusory statement that "Stiiizy has transacted business in Illinois and committed tortious acts in Illinois." (Doc. 1 at ¶ 95). It also points to Plaintiffs' allegation that Byron purchased one Delta-8 Stiiizy Starter Pack at a store in Swansea, Illinois, arguing that specific jurisdiction cannot be exercised over an out-of-state defendant based on a single sale in a forum, citing *Matlin v. Spin Master Corporation*, 921 F.3d 701, 707 (7th Cir. 2019).

In response, Plaintiffs argue that Stiiizy has deliberately and continuously exploited the Illinois market for sales of its products. Plaintiffs produced evidence that Stiiizy has hosted events in Illinois to promote the sale of its products, including a "massive launch party in Chicago" where guests were able to try Stiiizy's latest products. (Doc. 20-1). Stiiizy also announced the opening of a "flagship store in Chicago," and

claimed that the "launch of STIIIZY in Illinois is a significant development for the cannabis industry in the state." (*Id.*). In addition to its launch party and flagship Chicago store, Stiiizy sells its products "at almost every dispensary" in the State of Illinois, hosts events at those dispensaries, sells Illinois-themed Stiiizy merchandise, and claims that "STIIIZY is poised to make a big impact in the Illinois market." (*Id.*).

The Court finds that Plaintiffs have met their burden of demonstrating that Stiiizy purposefully availed itself of the privilege of conducting business in Illinois and directed its activities at Illinois residents. Stiiizy's arguments to the contrary are unpersuasive, and its citation to *Matlin* is distinguishable. In that case, two inventors sued their former company in Illinois for royalties from the products they invented. 921 F.3d at 703-04. When the defendants challenged personal jurisdiction in Illinois, the plaintiffs' own attorney submitted a receipt from the defendants' website showing that "he purchased and received a single patented product in Illinois." *Id.* at 704. The Seventh Circuit Court of Appeals held that personal jurisdiction was lacking for three reasons. First, the case involved "a single incident *conjured up by the plaintiffs' attorney* for the exclusive purpose of establishing personal jurisdiction over the defendants," second, the plaintiffs' claims did not arise out of defendants' contacts with Illinois, and third, the plaintiffs "attempted to salvage personal jurisdiction—after the defendants moved to dismiss—by luring them into shipping a product into Illinois." *Id.* at 706-07 (emphasis added).

Unlike the extremely limited contacts present in *Matlin*, in this case Plaintiffs have produced evidence that Stiiizy sells its products throughout Illinois and directly targets Illinois residents, both online and in brick-and-mortar stores. There is no doubt that

Stiiizy has purposely availed itself of the privilege of conducting business in Illinois.

### B. Relatedness

In addition to purposefully directing its activities at the forum state, "[t]he proper exercise of specific jurisdiction also requires that the defendant's minimum contacts with the forum state be 'suit-related.'" *Curry*, 949 F.3d at 400; *see also Ford Motor Co.*, 141 S. Ct. at 1026 (the plaintiffs' claims must "arise out of *or relate to* the defendant's contacts with the forum"). That is, "[t]here must be a connection between the forum and the specific claims at issue." *Id.* (citation and quotation omitted). "[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 931 n.6 (2011)). Yet, where a corporation has "continuously and deliberately exploited a State's market, it must reasonably anticipate being haled into that State's courts to defend actions *based on products causing injury there*." *Ford Motor Co.*, 592 U.S. at 364 (cleaned up and emphasis added).

Stiiizy asserts that Plaintiff Byron's purchase of a single Stiiizy-branded product at an unaffiliated retail location in Illinois is too attenuated to support an inference that Stiiizy's business activities in Illinois are related to her claims. The Court disagrees. Plaintiffs allege that Stiiizy's products were deceptively marketed, labeled, and sold to Illinois consumers, that Byron purchased a Stiiizy product in Illinois in reliance on Stiiizy's product labeling and representations about its products' THC content, and that Byron was harmed by the alleged misrepresentations on Stiiizy's product packaging. (Doc. 1 at ¶¶ 77-79, 85-87). These claims directly relate to Stiiizy's Illinois activities, which

include distributing the allegedly deceptive products to Illinois retailers, selling Stiiizy-branded products to Illinois consumers, and fostering familiarity with the Stiiizy brand through advertising. Thus, the Court finds that there is a sufficient relationship between the forum and Plaintiff Byron's claims.

Stiiizy also argues that the Court does not have personal jurisdiction over it with regard to Plaintiff Berry's Missouri claims. As the Supreme Court has explained on multiple occasions, for a court to exercise specific personal jurisdiction consistent with due process, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284. Additionally, this requirement applies separately to the claims of each named plaintiff. *See Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020) ("[N]amed representatives must be able to demonstrate either general or specific personal jurisdiction."); *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proc.*, 164 F. Supp. 3d 1040, 1047 (N.D. Ill. 2016) ("Based on the rationale underlying the 'minimum contacts' requirement as well as sensitivity to 'traditional notions of fair play and substantial justice,' . . . the specific personal jurisdiction inquiry in this case must be conducted separately for the claims of each individual plaintiff."); *Thomas v. Walmart Inc.*, 720 F. Supp. 3d 650, 661 (N.D. Ill. 2024) (finding that specific personal jurisdiction must exist independently for each separately pleaded claim, and dismissing claims of California plaintiff where claims were based on conduct that occurred solely in California); *Letoski v. Coca-Cola Co.*, No. 23 CV 238, 2024 WL 4476120, at *3 (N.D. Ill. Oct. 11, 2024) (dismissing claims of a Vermont citizen because he alleged no contacts with Illinois related to his purchases of defendant's product).

Here, Plaintiff Berry, the named Plaintiff for the proposed Missouri class, purchased a Stiiizy product in Missouri and seeks to represent a class of Missouri citizens who, likewise, purchased Stiiizy products in Missouri. Berry has alleged no facts related to the sale of a Stiiizy product in Illinois. Because Berry's claims are based solely on events that occurred in Missouri—and because Plaintiffs have provided no argument to the contrary—the Court finds that it lacks personal jurisdiction over Stiiizy with regard to Plaintiff Berry's Missouri claims. Accordingly, Counts IV, V, VI, and VII (as to the Missouri class only) shall be dismissed.

### C. Fair Play and Substantial Justice

Finally, exercising jurisdiction over Stiiizy in Illinois comports with traditional notions of fair play and substantial justice. *See Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945). In determining whether jurisdiction is reasonable, courts evaluate several factors, including: (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining relief, and (4) the interstate judicial system's interest in efficient resolution of controversies. *See Burger King*, 471 U.S. at 476-77.

Here, the burden on Stiiizy is minimal. Stiiizy is a Delaware corporation with nationwide operations, including substantial business activities in Illinois. (Doc. 1 at ¶ 55). Moreover, Stiiizy's sustained and intentional efforts to exploit the Illinois market provide reasonable notice of being haled into an Illinois court. *See Ford Motor Co.*, 592 U.S. at 364 (holding that a corporation must reasonably anticipate being haled into a State's courts when it "continuously and deliberately" exploits a State's market).

Furthermore, Illinois has a significant interest in protecting its residents from alleged consumer fraud, particularly when the defendant has cultivated a strong presence in the state. *See Curry*, 949 F.3d at 402 ("Illinois has a significant interest in providing a forum for its residents to seek redress for harms caused by out-of-state actors."). Stiiizy's alleged misrepresentations supposedly harmed Illinois consumers, further heightening the State's interest in adjudicating this matter. And the putative Illinois class, as Illinois residents, has a compelling interest in pursuing relief in their home forum. Adjudicating the claims in Illinois also promotes the interstate judicial system's interest in efficient resolution as Byron's claims are closely tied to Stiiizy's Illinois-related conduct. Finally, resolving the dispute in Illinois, where the relevant transaction occurred, ensures a logical forum for adjudication.

Considering these factors, the Court finds that exercising jurisdiction over Stiiizy in Illinois is reasonable and consistent with traditional notions of fair play and substantial justice. Accordingly, the Court finds that specific jurisdiction is proper with respect to the Plaintiff Byron and the putative Illinois class.

II.     **Motion to Dismiss Under Rule 12(b)(6) and Rule 9(b)**

Having determined that the Court has personal jurisdiction over Stiiizy with respect to Byron's claims, the Court now evaluates whether her fraud, negligent misrepresentation, and unjust enrichment claims survive Stiiizy's motion to dismiss under Rules 12(b)(6) and 9(b).

A.      <u>**Common Law Fraud**</u>

To state a claim for common law fraud in Illinois, a plaintiff must allege: (1) a false

statement of a material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 881–82 (7th Cir. 2005). Rule 9(b) requires allegations of fraud to be pleaded with particularity. *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018). In other words, a plaintiff must describe "the who, what, when, where, and how of the fraud." *Id.* (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). However, "knowledge" and "intent" may be alleged generally. FED. R. CIV. P. 9(b).

Here, Stiiizy argues that the Complaint must be dismissed under Rules 12(b)(6) and 9(b) because it fails to allege any plausible facts supporting the element of falsity. Instead, the Complaint contains a single allegation that an undated lab test on one Delta-8 product—which Byron did not purchase—contained more than the allowable amount of THC. It further contends that Byron has failed to adequately allege Stiiizy's knowledge of the falsity. Finally, Stiiizy asserts the Complaint fails to allege facts demonstrating its intent to induce consumers to rely on the falsity.

The Court finds these arguments unpersuasive. Byron alleges that Stiiizy sells a variety of cannabis and Delta-8 products in stores and online in Illinois. (Doc. 1 at ¶ 55). Its products include Delta-8 vape pens and edibles, which must contain less than 0.3% of active THC to qualify as Delta-8 hemp products. (*Id.* at ¶ 56). Stiiizy even represents through Certificates of Analysis that its Delta-8 products have been independently tested and that those results confirm its Delta-8 products contain less than 0.3% of active THC.

(*Id.* at ¶ 60). In reality, however, "Stiiizy's D8 products contain more than 0.3% of active THC." (*Id.* at ¶ 58). Indeed, independent testing of one Stiiizy Delta-8 product revealed 3.57% of Delta-9 THC. (Doc. 1 at ¶ 61). Meanwhile, Stiiizy's labels, packaging, advertisements, active ingredient information, and lab results provided to consumers do not accurately reflect the amount of active THC in Stiiizy's Delta-8 products. (*Id.* at ¶ 62). As a result, Byron alleges, consumers are being placed at increased health, safety, and medical risk by Stiiizy Delta-8 products that are, in fact, a controlled substance. (*Id.* at ¶ 68). Taking these facts as true, and drawing all inferences in Byron's favor, these allegations are sufficiently particular under Rules 12(b)(6) and 9(b) to support a reasonable inference of falsity.

With regard to Stiiizy's knowledge of the falsity, Byron alleges that Stiiizy is one of the nation's largest cannabis product manufacturers and, thus, is well aware of the THC requirements for all types of products, including Delta-8, CBD, and traditional cannabis products. (*Id.* at ¶ 75). Furthermore, under the Illinois Department of Agriculture's regulations governing the growth and processing of industrial hemp, all growers are subject to inspection and testing to verify that "delta-9 THC concentration does not exceed 0.3% on a dry weight basis." (*Id.* at ¶ 20). While Stiiizy purports to consumers that its Delta-8 products have been independently tested and contain less than 0.3% of active THC on its labels, on its packaging, and in advertising, Byron claims that, in actuality, Stiiizy's products contain well over the legal amount of active THC. (*Id.* at ¶¶ 60-61). These allegations, when accepted as true, are sufficient to support a reasonable inference that Stiiizy knew its Delta-8 products contained false representations and

omissions about their THC levels.

Finally, Byron adequately alleges Stiiizy's intent to induce consumers to rely on the falsity. Byron claims Stiiizy intends for consumers to rely on the false, deceptive, and misleading representations made in its packaging, labeling, and advertising for its Delta-8 products and that it profits financially as a result. Not only does Stiiizy profit from consumers who purchase the Delta-8 products in reliance upon Stiiizy's misrepresentations, but it also saves the burden and expense of complying with the far more extensive regulations and requirements placed upon cannabis products. (*Id.* at ¶¶ 71-73). Furthermore, absent Stiiizy's misrepresentations about the THC level of its Delta-8 products, consumers would *not* purchase the products. Again, accepting these allegations as true, the Court finds that Byron has adequately alleged Stiiizy's intent to induce consumers to rely on the falsity for its own financial benefit.

Stiiizy's motion to dismiss Byron's common law fraud claim is denied.

B. **ICFA**

To state a claim under the ICFA, a plaintiff must plead facts demonstrating that: (1) the defendant committed a deceptive or unfair act; (2) the defendant intended that others rely on the deception; (3) the act occurred in the course of trade or commerce; and (4) the act caused actual damages. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (citing *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019)). Claims of deception brought under the ICFA are analyzed under the heightened pleading standard set forth in Rule 9(b). *Haywood*, 887 F.3d at 333.

Courts apply a "reasonable consumer" standard when evaluating the likelihood

of deception and review the "totality of the information" available to the consumer at the point of deception. *Kahn v. Walmart Inc.*, 107 F.4th 585, 598 (7th Cir. 2024). "Where, as here, the alleged deceptive practice involves misleading labels, the ICFA requires plaintiff to allege plausibly that the relevant labels are likely to deceive reasonable consumers, which requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (quotation marks omitted).

Stiiizy moves to dismiss Byron's ICFA claim because nothing in the complaint plausibly suggests that Stiiizy committed a deceptive act. Stiiizy argues that Byron does not allege that any product she purchased has been tested or that any test results demonstrate that the product was mislabeled. And Stiiizy again argues Byron has not alleged facts showing Stiiizy knew the THC content of its products exceeded the legal limit.

As with the common law fraud claim, Stiiizy's arguments fail. Byron alleges that Stiiizy failed to accurately convey the amount of THC in its Delta-8 products, failed to identify them as cannabis, falsely labeled them as hemp products, and failed to use labels that accurately identified the quantity or proportion of THC in the products. (Doc. 1 at ¶ 133). She further claims that she relied upon the accuracy of the representations made on the packaging and labeling of the Delta-8 Stiiizy Starter Pack, including but not limited to representations regarding the percentage of active THC in the product. (*Id.* at ¶ 78). Unbeknownst to her, however, "the Delta 8 Stiiizy Starter Pack she purchased contained more than 0.3% of Delta-9 THC on a dry weight basis." (*Id.* at ¶ 81). At this point, Byron

does not need to prove that allegation.

Finally, Byron alleges that Stiiizy was aware of the alleged misrepresentations, as it engaged in these deceptive practices to avoid compliance costs and to induce customers to purchase its products. (*Id.* at ¶¶ 75, 128-131). These allegations, taken as true, are sufficient to state a claim for deception under the ICFA.

### C.    Negligent Misrepresentation

Byron concedes that her negligent misrepresentation claim brought under Illinois law is barred by the economic loss doctrine. Accordingly, Count III shall be dismissed.

### D.    Unjust Enrichment

Finally, Stiiizy argues that Byron's unjust enrichment claim is an impermissible "freestanding" claim that is not recognized under Illinois law. (Doc. 19 at 23-24). Stiiizy's argument relies on the dismissal of Byron's fraud and ICFA claims. But since those claims have not been dismissed, Byron's unjust enrichment claim remains viable. *See Kahn*, 107 F.4th at 606 (reinstating plaintiff's unjust enrichment claim after finding that plaintiff adequately pleaded the elements of an ICFA claim). Accordingly, Stiiizy's motion to dismiss Byron's unjust enrichment claim is denied.

### Conclusion

For these reasons, the Motion to Dismiss filed by Defendant Stiiizy (Doc. 19) is **GRANTED in part and DENIED in part**.

The claims of Plaintiff Taylor Berry in Counts IV, V, VI, and VII are **DISMISSED** for lack of personal jurisdiction.

Plaintiff Taylor Byron's negligent misrepresentation claim in Count III is

**DISMISSED** without prejudice.

This case shall proceed with discovery on Byron's claims in Counts I, II, and VII.

The Court will set a telephonic scheduling conference by separate Order.

**IT IS SO ORDERED.**

**DATED: January 29, 2025**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**